680 S.E.2d 277

**Terrence D. TERRY, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

No. 26683.

Supreme Court of South Carolina.

Submitted May 28, 2009.
Decided July 13, 2009.

362

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Karen C. Ratigan, all of Columbia, for Petitioner.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, of Columbia, for Respondent.

Justice BEATTY:

This Court granted the State's petition for a writ of certiorari to review the post-conviction relief (PCR) judge's order reversing Terrence Dimingo Terry's (Respondent's) plea of guilty to criminal sexual conduct (CSC) with a minor, first degree and two counts of lewd act upon a child. We reverse.

## FACTUAL/PROCEDURAL HISTORY

After Respondent's nine-year-old stepdaughter disclosed to her mother that Respondent had sexually abused her in July 2004, Mother confronted Respondent about the allegations. During this confrontation, it was revealed that Respondent's two other stepdaughters, ages eleven and twelve years old, had also been sexually abused by Respondent.

Subsequently, a family court proceeding brought by the Department of Social Services was conducted wherein Respondent admitted to the allegations. As a result, a treatment plan was put into effect to address Respondent's conduct.

In February 2005, a Greenville County grand jury indicted Respondent for two counts of lewd act upon a child involving the older two stepdaughters and one count of CSC with a

minor, first degree regarding the allegations of the nine-year-old stepdaughter.

The next month, Respondent pled guilty to each of the three indicted offenses. At the plea proceeding, the circuit court judge inquired about Respondent's background in terms of his age, education level, and marital status. In terms of his health, Respondent indicated that he was currently taking medication for hypertension but that he felt fine and had not taken any medication, drugs, or alcohol within the twenty-four hours before the proceeding. Respondent acknowledged that he had previously been treated for "drugs and psychiatric." He did not, however, elaborate on this treatment.

After the introductory questions of the plea colloquy, the judge informed Respondent of the offenses for which he was charged[1] and the maximum possible sentences for these offenses. Respondent indicated that he understood the charges and intended to plead guilty to each of the offenses. The judge then instructed Respondent that by pleading guilty he would waive the following constitutional rights: the right to a jury trial, the State's burden of proof, his right to cross-examine the State's witnesses, his right to present a defense, and his right against self-incrimination. Respondent stated that he understood these rights but had made the decision to plead guilty.

After admitting his guilt, Respondent indicated that he was satisfied with his counsel's representation and had been given ample time to review the State's evidence.

The solicitor then provided the following factual basis for Respondent's guilty plea, stating:

---

1. The judge read excerpts from the indictments. In terms of the charge of CSC with a minor, first degree the judge informed Respondent that the indictment "alleges you did in Greenville County July 4, '04 engage in sexual battery with child-victim # 3, less than eleven years of age."

As to one of the charges of lewd act upon a child, the judge stated that the indictment "alleges you did in Greenville County on or about—between June 1st and June 25th, '04 being over the age of fourteen willfully and lewdly committed a lewd and lascivious act upon the body or its parts of child-victim # 2, a child under the age of sixteen with the intent of arousing, appealing to, gratifying the lusts, passions, or sexual desires of yourself or the child." The judge reiterated this language as to the second count of lewd act upon a child with the exception that the date of the offense was May 31, 2004, and involved child-victim # 1.

On July 4th of 2004, [Respondent] put hair grease on his penis and on the victim's vagina and attempted to have sexual intercourse with her. When he was unable to do so he then penetrated her vagina with his finger and her anus with his penis. This victim was the [Respondent's] nine year old step-daughter.

In May and June, 2004 [Respondent] also committed numerous lewd acts on his other two step-daughters, eleven and twelve years old by kissing them on the mouth, rubbing their breasts, vaginal areas, and buttocks, and rubbing his body against theirs. All these incidents occurred while the family resided at 1 Woodmont Lane in Greenville County. The [Respondent's] wife, the mother of all three victims confronted the [Respondent] when the nine-year-old victim disclosed her abuse. And the [Respondent] stated that he did not know why he did it. The [Respondent] admitted guilt in the DSS family court proceedings.

Following the solicitor's recitation of the facts, the judge asked Respondent whether the solicitor's statements were true. Respondent stated that they were true. Respondent's counsel then informed the judge that Respondent had admitted his guilt, but had told him "only a crazy person would do something like that." Counsel clarified that Respondent was not insane but recognized the "terrible act."

Subsequently, the judge sentenced Respondent to twenty years imprisonment for CSC with a minor, first degree and fifteen years for each count of lewd act upon a child. The sentences were to be served concurrently.

Respondent did not file a direct appeal of his guilty plea. Eight months after the plea, Respondent filed an application for PCR. In his application, Respondent requested relief on the following grounds: prosecutorial misconduct, ineffective assistance of counsel, and the plea court's lack of subject matter jurisdiction. In an amended application filed by his PCR counsel, Respondent asserted the following additional grounds for relief: his plea was not knowingly, voluntarily, and intelligently made; his plea counsel did not make him aware of the "nature and crucial elements of the charge against him"; at the time of the plea he was under the influence of prescribed mental health medications that affected

his ability to comprehend what he was doing; and his plea counsel failed to inform him of the right to appeal his guilty plea.

On March 1, 2007, the circuit court held a hearing on Respondent's PCR application. At the start of the proceeding, Respondent's counsel outlined Respondent's bases for his request for PCR. Counsel primarily focused her argument on Respondent's allegations of ineffective assistance of counsel.

Specifically, PCR counsel alleged that plea counsel was ineffective in the following respects: (1) he failed to bring to the court's attention Respondent's mental health issues, particularly the fact that Respondent was housed in the mental health section of the Greenville County detention center for nine months prior to the plea proceeding and was taking "antipsychotic" medication; (2) he failed to evaluate the State's evidence in that he did not make a discovery request and he did not view the physical evidence or the "rape kit"; and (3) he failed to offer any mitigation evidence, such as the lack of physical evidence, the absence of the victims at the plea proceeding, the Respondent's lack of a prior record, and the Respondent's twelve-year military history. Additionally, PCR counsel emphasized that Respondent's plea counsel failed to review the meaning of "sexual battery" with Respondent prior to the plea. Counsel asserted that the failure to review a crucial element of the offense was particularly significant given Respondent's competency was in question.

PCR counsel then called Respondent as a witness. Respondent testified that he met with plea counsel only once, the day of the plea proceeding, for a ten-minute consultation. He further stated that plea counsel never provided or reviewed discovery with him. Because he did not review any discovery materials, Respondent claimed he was unaware of the SLED report stating that no physical evidence was found on the clothing of the nine-year-old victim. Although Respondent acknowledged that he pled guilty, he claimed that he did not understand the nature of the charges, particularly the meaning of "sexual battery." Respondent stated that his plea counsel did not explain the meaning of this term. He further testified that had he known the definition of "sexual battery," he would not have pled guilty.

Throughout his direct examination, Respondent repeatedly emphasized that he was unable to adequately comprehend the plea proceeding due to his mental health issues and the medications he was taking to treat these issues. Respondent contended that he admitted to the truth of the solicitor's factual recitation at the plea proceeding because he lacked the ability to comprehend and adequately defend himself at that time.

Although Respondent specifically denied committing a sexual battery on the nine-year-old victim, he admitted there was inappropriate touching. Despite the State's assertion that Respondent admitted to committing a sexual battery during the family court proceeding, Respondent testified he could not recall such an admission. Respondent acknowledged that the family court's order included a treatment plan stemming from a finding of sexual abuse. Respondent, however, noted that there was no finding of sexual battery or CSC with a minor.

On cross-examination, Respondent maintained that he did not inform the plea judge of the extent of his mental health problems because the "psychiatric medication ... rendered [him] incompetent to speak for [himself]." Although Respondent acknowledged that he was aware of the plea proceeding, he contended he did not want to plead guilty and only did so due to his diminished "mental capabilities."

Respondent's plea counsel was the second and final witness to testify. Counsel testified that he could not recall how many times he met with Respondent prior to the plea proceeding. He did remember that "he went over the materials [he] had in his possession." Plea counsel explained that he did not file a discovery motion because the solicitor had an open file policy and he copied the solicitor's file. Counsel, however, was not aware of the SLED report which indicated that there was no physical evidence found regarding the CSC with a minor offense. Counsel testified he was aware that Respondent had gone to a family court hearing, but he did not appear with Respondent because he did not know about the hearing at the time it was conducted. Plea counsel further stated that prior to the plea proceeding he went over the allegations with Respondent who told him that "something happened." Plea counsel testified Respondent was evasive and remorseful but

never said he was not guilty. Based on this discussion, plea counsel was "satisfied that it happened" but Respondent did not want to say he did it. When questioned whether Respondent appeared confused about the plea proceeding, plea counsel explained:

The only thing that I would say that he—he wanted to admit without admitting that he did this act. You know. He danced around it but I'm going to plead guilty. You, know I'm going to plead guilty. But, you know, when you get into specifics as to what he did, he would kind of be evasive but something happened. And that's what he told me. I said, "Well you're going to plead guilty to it?" And he said, Yes.

On cross-examination, plea counsel testified that at the time he was appointed he was not aware that Respondent was being housed in the mental health section of the Greenville County detention center. He further stated that his file did not reflect that he had met with Respondent prior to the day of the plea hearing. In terms of the contents of his file, plea counsel testified that he had the "discovery package" provided by the solicitor's office. Counsel, however, acknowledged that this package did not include the SLED examination and he did not go to the law enforcement center to review the evidence. According to plea counsel, the package included the family court order in which there was a finding of sexual abuse. When asked why he did not object to the solicitor's statement that Respondent admitted his guilt in the family court proceeding, plea counsel stated, "To me it's all the same . . . sexual conduct. Misconduct. I didn't make that distinction." When specifically questioned as to whether sexual abuse is the same as sexual battery, plea counsel responded "It's all the same."

With respect to his pre-plea discussions with Respondent, plea counsel stated that he told Respondent what the allegations against him were and that Respondent understood the charges. Plea counsel admitted that he did not discuss the SLED report, the rape kit, or the victim's statement. Instead, counsel "talked about [Respondent] appearing in court to plead guilty and that he was guilty." Counsel believed he had enough time to go over the discovery, the plea judge's questions, and whether or not Respondent wanted to plead

guilty. Counsel maintained that Respondent wanted to plead guilty.

By order dated March 26, 2007, the PCR judge granted Respondent's application and, in turn, reversed and remanded his convictions for CSC with a minor, first degree and two counts of lewd act upon a child. In so holding, the PCR judge found plea counsel was ineffective for failing to advise Respondent regarding the meaning of "sexual battery."[2] The judge noted that plea counsel "admitted that he did not review the meaning of sexual battery with the [Respondent] saying that lewd act and criminal sexual conduct with a minor are basically the same thing, messing with children." Based on plea counsel's testimony, the judge found counsel "demonstrated a lack of knowledge of the nature of the crimes for which he represented the [Respondent]." In light of this testimony and Respondent's testimony, the judge concluded that plea counsel did not advise Respondent of "the meaning of sexual battery and the significance of penetration as it relates to criminal sexual conduct with a minor in the first degree." The judge further found that plea counsel's error was not cured by the plea colloquy. Ultimately, the judge held that plea counsel's performance fell below reasonable and prevailing professional norms given counsel did not advise Respondent of the elements of CSC with a minor and did not ensure that Respondent understood the nature of the offense. Finally, the judge found that Respondent proved he was prejudiced by plea counsel's deficient performance given Respondent demonstrated that he would have insisted on going to trial had he known the definition of "sexual battery."

The PCR judge denied the State's motion to alter or amend the order. Subsequently, this Court granted the State's petition for a writ of certiorari to review the PCR judge's order.

## DISCUSSION

The State argues the PCR judge erred in finding Respondent would not have pled guilty if plea counsel had explained the definition of a "sexual battery." Because plea counsel

---

2. The PCR judge found Respondent's remaining allegations of ineffective assistance of counsel, prosecutorial misconduct, and lack of subject matter jurisdiction to be without merit.

reviewed the pending charges and the discovery material with Respondent prior to the plea proceeding, the State contends counsel's failure to use the term "sexual battery" did not render counsel's performance deficient. Even if counsel's performance was deficient, the State claims that Respondent did not prove prejudice given he had admitted his misconduct and any error was cured by the plea colloquy. Ultimately, the State seeks a reversal of the PCR judge's decision to grant Respondent a new trial on all of his convictions.

A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 370, 169 L.Ed.2d 247 (2007).

In a PCR proceeding, the applicant bears the burden of establishing that he or she is entitled to relief. *Caprood v. State*, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). "In the context of a guilty plea, the court must determine whether 1) counsel's advice was within the range of competence demanded of attorneys in criminal cases—i.e. was counsel's performance deficient, and 2) if there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty." *Smith v. State*, 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 56–58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

"When considering an allegation on PCR that a guilty plea was based on inaccurate advice of counsel, the transcript of the guilty plea hearing will be considered to determine whether information conveyed by the plea judge cured any possible error made by counsel." *Burnett v. State*, 352 S.C. 589, 592, 576 S.E.2d 144, 145 (2003). "Specifically, the voluntariness of a guilty plea is not determined by an examination of a specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea, and also from the record

of the PCR hearing." *Roddy v. State,* 339 S.C. 29, 31, 528 S.E.2d 418, 420 (2000).

▮ "This Court gives great deference to the post-conviction relief (PCR) court's findings of fact and conclusions of law." *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). In reviewing the PCR court's decision, an appellate court is concerned only with whether any evidence of probative value exists to support that decision. *Smith,* 369 S.C. at 138, 631 S.E.2d at 261. This Court will uphold the findings of the PCR court when there is any evidence of probative value to support them, and will reverse the decision of the PCR court when it is controlled by an error of law. *Suber v. State,* 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007).

▮ Section 16–3–655 of the South Carolina Code outlines the crime of first-degree criminal sexual conduct with a minor as follows: "A person is guilty of criminal sexual conduct in the first degree if the actor engages in sexual battery with the victim who is less than eleven years of age." S.C.Code Ann. § 16–3–655(1) (2003).[3]

"Sexual battery" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C.Code Ann. § 16–3–651(h) (2003).

In contrast to "sexual battery," "sexual abuse" has been defined as "(a) actual or attempted sexual contact with a child; or (b) permitting, enticing, encouraging, forcing, or otherwise facilitating a child's participation in prostitution or in a live performance or photographic representation of sexual activity or sexually explicit nudity; by any person including, but not limited to, a person responsible for the child's welfare, as defined in Section 20–7–490(5)." S.C.Code Ann. § 17–25–135(B)(2) (2003 & Supp.2008).

The term "sexual abuse" has been used to generally describe conduct which precipitates a charge of CSC with a

---

**3.** Because the alleged sexual misconduct occurred in July 2004, we cite to this version of the statute given there have been substantive changes made to section 16–3–655 in subsequent years.

minor. *See, e.g., State v. Ladner,* 373 S.C. 103, 644 S.E.2d 684 (2007) (affirming conviction for first-degree CSC with a minor and discussing victim's statement and medical evidence indicating victim's injuries were consistent with sexual abuse). This general use, however, has never equated "sexual abuse" with "sexual battery."

Clearly, a severe incident of child sexual abuse may constitute a "sexual battery" and, in turn, CSC with a minor. However, one who sexually abuses a child is not necessarily guilty of CSC with a minor. For example, an inappropriate touching of a child without penetration of the child's "genital or anal openings" would constitute sexual abuse, but would not necessarily rise to the level of a "sexual battery" and a charge of CSC with a minor. Instead, such sexual abuse would warrant a charge of lewd act upon a child. *See* S.C.Code Ann. § 16–15–140 (2003) ("It is unlawful for a person over the age of fourteen years to wilfully and lewdly commit or attempt a lewd or lascivious act upon or with the body, or its parts, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the person or of the child."). Thus, the terms "sexual abuse" and "sexual battery" are not synonymous.

In the instant case, plea counsel testified at the PCR hearing that he believed the terms were the same. Because plea counsel did not differentiate between the two terms or correctly explain them to Respondent, there is evidence to support the PCR judge's decision that plea counsel's performance was deficient. Given plea counsel did not comprehend this distinction and did not inform Respondent of a crucial element of the offense of CSC with a minor, first degree, we agree with the PCR judge that counsel's representation fell below an objective standard of reasonableness.

We find, however, plea counsel's deficient performance was cured by the plea colloquy even though there was no specific discussion of the term "sexual battery." Notably, the PCR judge found that any allegations regarding Respondent's competency were not meritorious. In light of this decision, the PCR judge implicitly found that Respondent had the requisite mental capacity to comprehend the plea proceeding.

At the plea proceeding, the judge read the indictments and Respondent acknowledged that he understood these charges. The indictment for CSC with a minor, first degree identified the elements of the offense which included a reference to a "sexual battery." After Respondent affirmatively stated that he understood the charges and admitted his guilt, the solicitor gave a detailed factual basis for the charges. In his factual recitation, the solicitor identified conduct which would constitute the elements of first-degree CSC with a minor. Specifically, the solicitor conveyed that Respondent had penetrated the nine-year-old victim's vagina with his finger and her anus with his penis. Both of these acts clearly meet the definition of a "sexual battery." Respondent admitted that the solicitor's statement of facts was true. Therefore, we find Respondent knowingly and voluntarily entered a plea as to the charge of CSC with a minor, first degree. *See Roddy,* 339 S.C. at 33–34, 528 S.E.2d at 421 (recognizing that for a guilty plea to be voluntarily and knowingly entered into, the record must establish the defendant had a full understanding of the consequences of his plea and the charges against him (citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).

In view of our decision, we further conclude the PCR judge erred in granting Respondent a new trial for the two counts of lewd act upon a child. As previously stated, the PCR judge's primary reason for granting Respondent's petition for relief was plea counsel's failure to correctly inform Respondent of "sexual battery," an element of CSC with a minor, first degree. Given a "sexual battery" is not an element of lewd act upon a child and Respondent admitted to inappropriately touching his stepdaughters, the two charges for lewd act upon a child should not have been affected by plea counsel's deficient performance with regard to the definition of a "sexual battery." Accordingly, we find there is no evidence to support the PCR judge's decision to grant Respondent's relief on these two convictions.

## CONCLUSION

In terms of Respondent's conviction for CSC with a minor, first degree, we find any deficient performance by plea counsel was cured by the plea colloquy. As to the remaining two

charges, we hold there is no evidence to support the PCR judge's reversal of the two counts of lewd act upon a child given any deficient performance by plea counsel regarding his failure to inform Respondent of the term "sexual battery" would not have affected Respondent's plea of guilty to the charges of lewd act upon a child. Accordingly, the decision of the PCR judge is

**REVERSED.**

TOAL, C.J., WALLER, PLEICONES and KITTREDGE, JJ., concur.