692 S.E.2d 196

**Tommy HUTTO, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**No. 26796.**

Supreme Court of South Carolina.

Heard Oct. 8, 2009.

Decided April 5, 2010.

Deputy Chief Appellate Defender Wanda H. Carter, of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Mary S. Williams, of Columbia; and John Benjamin Aplin, of Columbia, for Respondent.

Chief Justice TOAL.

In this case, we granted a writ of certiorari to review the court of appeals' decision affirming the post-conviction relief (PCR) judge's denial of relief. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

Tommy Hutto (Petitioner) broke into a 91–year old woman's home, cutting his arms and hands on the glass in the back door. Once inside, Petitioner sexually assaulted and robbed the victim. After he left her home, the victim notified the police, but Petitioner was neither identified nor caught at that time. About a month later, Ronnie Bends, Petitioner's probation agent from a previous conviction, went to Petitioner's home on a routine visit. Agent James Harris accompanied

Agent Bends. During the visit, Agent Harris noticed the cuts on Petitioner's arms.

Hubert Nimau, the officer investigating the assault and robbery, received a tip about the crime from a crime watcher's newspaper article. Investigator Nimau questioned other officers, asking if they had seen anyone with cuts on his arms and hands. Investigator Nimau asked Agent Bends, who then called Agent Harris into his office to describe the injuries he had observed on Petitioner.

After receiving the information from both Agent Harris and the crime watcher's tip, Investigator Nimau included Petitioner's photograph in a photographic line-up shown to the victim. The victim identified Petitioner's photograph as the man who broke into her house. Based on the victim's identification, Investigator Nimau obtained a warrant for Petitioner's blood. DNA samples taken from the crime scene matched Petitioner's blood.

Petitioner was convicted of armed robbery, first degree criminal sexual conduct, and first degree burglary. At trial, Agent Harris had testified about the cuts he observed on Petitioner's arms and hands. Petitioner applied for PCR, arguing that his trial counsel was ineffective for failing to move to suppress Agent Harris's testimony based on S.C.Code Ann. § 24–21–290 (2007 & Supp.2008), which provides:

> All information and data obtained in the discharge of his official duty by a probation agent is privileged information, is not receivable as evidence in a court, and may not be disclosed directly or indirectly to anyone other than the judge or others entitled under this chapter to receive reports unless ordered by the court or the director.

The PCR judge denied Petitioner's request and the court of appeals affirmed.

### STANDARD OF REVIEW

In post-conviction proceedings, the burden of proof is on the applicant to prove the allegations in his application. *Butler v. State,* 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985). On appeal, the PCR court's ruling should be upheld if it is supported by any evidence of probative value in the record. *Cherry v. State,* 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989).

LAW/ANALYSIS

■ Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cherry v. State,* 300 S.C. 115, 117, 386 S.E.2d 624, 625 (1989). To establish ineffective assistance of counsel, the applicant must show: (1) counsel's representation was deficient, as measured by an objective standard of reasonableness, and (2) applicant was prejudiced by counsel's performance, such that there is a reasonable probability the outcome of the trial would have been different absent the deficiency. *Id.* at 117–18, 386 S.E.2d at 625.

## I. Deficient Performance

■ Petitioner argues that trial counsel's performance was deficient in that he failed to move to suppress Agent Harris's testimony under section 24–21–290. We disagree.

Petitioner contends that this statute makes all information gathered during the execution of the probation agent's duties privileged information. However, we find the legislature did not intend this statute to have such a broad application that it would cover anything the probation agent sees when visiting his client. We agree with the court of appeals' interpretation and believe that the statute's purpose is to foster open lines of communication between the probation agent and client. We do not believe the legislature intended the statute to cover physical observations, such as the one made in this case, that anyone could have made when encountering Petitioner. The information obtained was not reliant upon the probation agent/client relationship. Preventing a probation officer from reporting what he sees during his visit to his client, as the State argues, could mean that he would be unable to report evidence of a crime he sees in his client's home. Such a result is neither intended by the legislature nor necessary to further the goals of the statute.

## II. Prejudice

Even if counsel's performance were deficient, Petitioner was not prejudiced.

Petitioner argues that both Agent Harris's trial testimony and his disclosure of Petitioner's cuts to Investigator Nimau violated the privilege contained in section 24–21–290. Petitioner further contends that trial counsel's allegedly deficient performance in not knowing the statute allowed the presentation at trial of testimony and evidence that was not properly admissible, without which there would be no evidence linking Petitioner to the crime. We address each of these arguments in turn.

## A. Trial Testimony

To show prejudice, a defendant must demonstrate there is a reasonable probability the result of the trial would have been different absent trial counsel's deficient performance. *Id.* at 117–18, 386 S.E.2d at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Johnson v. State*, 325 S.C. 182, 183, 480 S.E.2d 733, 735 (1997). No prejudice occurs, despite deficient performance, when there is overwhelming evidence of guilt. *Rosemond v. Catoe*, 383 S.C. 320, 325, 680 S.E.2d 5, 8 (2009).

Assuming that trial counsel's performance had been deficient for failing to suppress Agent Harris's testimony, Petitioner suffered no prejudice because even without Agent Harris's testimony there was overwhelming evidence of Petitioner's guilt. First, the victim identified Petitioner's photograph as showing the man who assaulted and robbed her. Second, based on the victim's identification, the police obtained a search warrant for Petitioner's blood. Third, the DNA obtained from Petitioner's blood sample matched the DNA from blood taken from the crime scene. There can be no reasonable probability that a jury confronted with this body of evidence would have returned anything other than a guilty verdict.

Because the victim's identification and the results of the DNA testing constitute evidence, in the face of which, no reasonable jury would find Petitioner not guilty, Petitioner cannot show that the outcome of his trial reasonably might have been different if Agent Harris's testimony were excluded. Therefore, Petitioner was not prejudiced by counsel's failing to move to suppress Agent Harris's testimony under section 24–21–290.

### B. Disclosure to Investigator Nimau

■ Petitioner argues: (1) section 24–21–290 was violated when Agent Harris told Investigator Nimau about the cuts on Petitioner's arms and hands; and (2) that this statutory exclusion applies to both the victim's identification of Petitioner in the final photographic line-up and the DNA evidence because they only could be obtained by a violation of the privilege created by the statute in question. We disagree.

While we do not believe Agent Harris's disclosure violates the statute, assuming *arguendo* there was a violation, such violation would not warrant the exclusion of the evidence obtained from the information disclosed. Section 24–21–290 only creates a statutory privilege and does not implicate a constitutional right; therefore, the exclusionary rule does not apply. *See State v. Chandler*, 267 S.C. 138, 143, 226 S.E.2d 553, 555 (1976) ("[E]xclusion of evidence should be limited to violations of constitutional rights and not to statutory violations . . . .").

Further, Agent Harris' disclosure was not the sole piece of information that led to the victim's identification and the subsequent DNA evidence. The crimewatchers tip was also relied upon in including Petitioner's photograph in the line-up. The victim's identification and the DNA evidence are pieces of evidence independent from Agent Harris' disclosure because his disclosure was not the only source that led to the evidence. Thus, they are in no way infected by the alleged statutory privilege issue and are properly admissible.

#### CONCLUSION

For these reasons, we affirm the court of appeals' decision denying Petitioner post-conviction relief.

WALLER, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES, dissenting.

I respectfully dissent. In my view, trial counsel's performance did not meet prevailing professional norms, and that deficient performance prejudiced petitioner. *McKnight v.*

*State,* 378 S.C. 33, 661 S.E.2d 354 (2008). I would therefore reverse the order which denied petitioner post-conviction relief (PCR).

Petitioner's PCR claim rests on two instances of allegedly ineffective assistance of counsel: first, trial counsel's failure to object to Agent Harris's testimony at trial, and second, his failure to object to the admissibility of the victim's identification of petitioner both in and out of court, as well as the DNA evidence. Petitioner contends that this evidence was barred by S.C.Code Ann. § 24–21–290 and would have been excluded had trial counsel objected. I agree.

The statute explicitly bars Agent Harris's trial testimony, as § 24–21–290 renders "information and data obtained in the discharge of his official duty by a probation officer" "not receivable as evidence in a court" unless permission to disclose is granted by the trial judge or the director. No such permission was sought or granted here. It is unclear whether the majority finds Agent Harris's testimony objectionable since it holds that the statutory terms "information and data" do not include anything observed by the probation agent. Unlike the majority, however, I do not see anything in the statute which exempts "information and data" perceived by the officer's sense of sight from its ambit. It seems to me that if the statute were intended to create a privilege only as to statements made by the probationer to his agent, it would say just that.

The majority expresses concern that if the statute makes observations privileged, then a probation officer who observed evidence of a crime while conducting a home visit would be prevented from reporting that evidence. However, nothing in the statute prevents such a report as the majority suggests, rather § 24–21–290 simply requires that the probation officer first be "ordered" to disclose the information and/or data by a court or the director, or relay it to "others entitled ... to receive [his] reports...." The statute recognizes that there will be situations where, on balance, the privilege must yield to policy, and provides a mechanism for disclosure. For whatever reason, Agent Harris did not follow that procedure here, and the "information and data" remained privileged. In my view, making the confidences between a probationer and his

agent presumptively privileged furthers the legislative goal of "fostering open lines of communication."

Moreover, I am concerned that the majority dismisses any prejudice from Agent Harris's trial testimony by finding it harmless based on the evidence derived from Agent Harris's improper disclosure to Inspector Nimau. As explained below, the victim's photo line-up identification of petitioner and the subsequent DNA testing of his blood were the direct result of Agent Harris's breach of the statutory privilege, not as the majority holds, "independent from Agent Harris's disclosure." The record reveals that after the crime occurred on July 16, the investigating officer put out a "Be On the Lookout" (BOLO) for an individual with cuts on his forearms. The victim was shown two photographic lineups in July, but was unable to identify anyone. The persons included in these lineups were "subjects generated through crime watchers." Although petitioner was apparently named in a tip to crime watchers, no action was taken on this information until after Inspector Nimau spoke with Agent Harris in early August. "Based on this information, Nimau compiled a third photographic line-up, which he presented to the victim on August 19. . . ." *State v. Hutto,* Op. No. 2002–UP395 (S.C. Ct.App. filed June 4, 2002). Relying on the victim's August 19 identification of petitioner, Nimau executed an affidavit relating Harris's observations and the victim's subsequent identification in order to obtain a search warrant for a blood sample from petitioner. *Id.*

The statute not only explicitly bars Agent Harris's trial testimony, but also bars the disclosure of "all information and data" obtained "directly or indirectly [from him] to anyone other than the judge or others entitled under this chapter to receive reports" absent permission. § 24–21–290. Here, there was no permission sought or granted before Agent Harris was questioned by Investigator Nimau. In my view, the resulting identification by the victim and the DNA evidence found as the result of the warrant issued after her identification is "information and data" obtained indirectly as a result of Agent Harris's unlawful disclosure to Investigator Nimau, and therefore privileged under § 24–21–290.

As we held in *State v. Hook*, 356 S.C. 421, 590 S.E.2d 25 (2003), the construction of the privilege in § 24–21–290 is a question of legislative intent, not constitutional law. The purpose of the statutory privilege is clear: to encourage an atmosphere in which there is open communication and cooperation between a probationer and his probation agent. The statute expressly states that information and data obtained in the discharge of the agent's duty is "not receivable as evidence in court," and thus the evidentiary exclusion arises from the terms of the statute creating the privilege, not the application of the exclusionary rule. To permit information or data obtained directly or indirectly as a result of a violation of the statute to be received as evidence in court defeats the legislative intent in creating this privilege.

Because the statute bars disclosure of "information and data" without an order of the court or director, whether directly or indirectly, and because the victim's identification of petitioner in the photo lineup, the DNA evidence, and the victim's in-court identification were not obtained "independent" of Agent Harris's unlawful disclosure, I would hold that this evidence cannot be received "as evidence in a court." Any other ruling, in my view, invites probation officers to violate the statutory privilege by disclosing the information and data to third persons not otherwise entitled to it, without first being "ordered" to do so. Under the interpretation adopted by the majority today, these unauthorized persons are then free to present the evidence in court.

In my view, petitioner was prejudiced by counsel's deficient performance since had an objection been made it should have been sustained. I would reverse the denial of petitioner's application for PCR, finding both that counsel's performance was deficient and that petitioner was prejudiced thereby.