Darryl FRIERSON, Petitioner,

v.

STATE of South Carolina, Respondent.

Appellate Case No. 2012–211091
Opinion No. 5420

Court of Appeals of South Carolina.

Heard September 8, 2015
Filed June 29, 2016
Rehearing Denied August 18, 2016

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General John Walter Whitmire, and Assistant Attorney General James Clayton Mitchell, III, all of Columbia, for Respondent.

MCDONALD, J.:

Darryl Frierson (Petitioner) pled guilty to kidnapping, armed robbery, assault and battery of a high and aggravated nature (ABHAN), and criminal conspiracy. He appeals from the denial of his application for post-conviction relief (PCR), arguing the PCR court erred in not finding his guilty plea was involuntary due to counsel's failure to advise him he could move to suppress evidence stemming from the placement of a mobile tracking device on his car. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On May 10, 2007, Petitioner and his co-conspirators stole approximately 9.8 million dollars from an Express Tellers Services (ETS) armored truck. ETS employees David Jones (Jones) and Petitioner drove the truck from Charleston to Columbia, where two co-conspirators—Jeremy McPhail (McPhail) and Dominic Lyde (Lyde)—attacked Jones while he refueled, pushed him into the truck, and restrained him. The co-conspirators drove the truck away and stopped in a field, where two other co-conspirators—Domonique Blakney (Domo-

nique) and Kelby Blakney (Kelby)—transferred money from the truck into a different car, left Jones and Petitioner in the truck, and fled.

Despite suffering substantial injuries, Jones was able to free himself and walk to a nightclub to call the police. Officers responding to the scene found Petitioner still inside the armored truck. Petitioner self-reported injuries and was transported to the hospital, where a team of investigators came to interview him.

Petitioner provided a fictitious account of the incident that immediately alerted investigators to the possibility of dishonesty. For example, although it was dark outside at the time of the heist and Petitioner alleged he was too injured to escape the abandoned armored car, he provided a very detailed account of the surrounding crime scene. During a follow-up interview at the police station, officers became more suspicious when they saw Petitioner through the two-way mirror freely moving his arm, despite his claims of injury to his arm and shoulder. Petitioner failed a polygraph test and had no duct tape residue or significant injuries such as those suffered by Jones. At this point, the investigative team at the police station determined Petitioner was a suspect, not a victim, and placed a Global Positioning System (GPS) tracking device on Petitioner's car—without a warrant or court order—before he left the police department.

Although the Richland County Sheriff's Department's led the detectives working on the case, dozens of additional law enforcement officers from across the state took part in the investigation. While Petitioner was being interviewed at the station, a separate team of officers was examining the armored truck. They collected a blue latex glove from inside the truck that was identical to a glove found in the trash abandoned on the street outside Petitioner's house. In addition, officers interviewing other ETS employees learned that Paul Whitaker (Whitaker), another co-conspirator,[1] and Petitioner were friends. When police questioned Whitaker, he became upset, started crying, and immediately confessed to his role in

---

1. Whitaker's role was to field phone calls from the armored truck at ETS headquarters to delay detection of the robbery and provide the co-conspirators time to flee.

the scheme. According to Whitaker's statement, Petitioner had been planning to rob the armored truck for several months. Police searched Whitaker's house, where they discovered a large amount of cash and receipts from Petitioner's recent purchases. Based on Whitaker's confession and the evidence gathered at his home, police obtained a warrant for Petitioner's arrest.

Monitoring the tracking device on Petitioner's car, police located him driving with Domonique and found several thousand dollars in cash in the car. Police arrested Petitioner and interviewed Petitioner and Domonique in separate rooms at the police department. On Domonique's cell phone, officers found pictures of large bags of money. Domonique subsequently gave a statement admitting his role in the robbery and implicating Petitioner as the "mastermind." After police told Petitioner about Domonique's statement, Petitioner waived his rights and confessed to his involvement in the heist.

In September 2007, a grand jury indicted Petitioner for kidnapping, armed robbery, ABHAN, and criminal conspiracy. Domonique, Kelby, McPhail, Lyde, and Whitaker were also indicted for their involvement in the conspiracy.

On December 3, 2008, Petitioner pled guilty to all charges. At the plea hearing, Petitioner acknowledged he understood that by pleading guilty he was waiving his constitutional rights, including his right to challenge the State's evidence at trial. Petitioner also stated he was satisfied with plea counsel's representation. He testified plea counsel reviewed with him and explained his charges, his potential sentences, and his constitutional rights, allowing him to make an informed and intelligent decision about whether to plead guilty or proceed to trial. The plea court accepted Petitioner's guilty plea but deferred sentencing until a later proceeding.

On August 24, 2009, the plea court sentenced Petitioner to concurrent sentences of thirty years' imprisonment for kidnapping, thirty years' imprisonment for armed robbery, and ten years' imprisonment for ABHAN, as well as a consecutive sentence of five years' imprisonment for criminal conspiracy.

Petitioner filed a PCR application, alleging ineffective assistance of counsel. At the PCR hearing, Petitioner testified that plea counsel's lack of confidence about the outcome of a trial

prompted Petitioner to plead guilty despite his desire to go to trial. Petitioner also stated plea counsel influenced him to plead guilty by telling him his co-defendants would testify against him at trial.

Petitioner further testified he asked plea counsel to research the legality of the placement of the GPS tracking device because damaging evidence stemmed from the use of the device. According to Petitioner, plea counsel did not discover section 17–30–140 of the South Carolina Code (2014), which requires a warrant or court order for the placement of tracking devices. Plea counsel told Petitioner the placement of the tracking device on the outside of the vehicle was legal based on his research. However, Petitioner testified he would not have pled guilty and would have proceeded to trial if plea counsel had advised him of section 17–30–140 and his ability to challenge the search and use of the resulting evidence.

Plea counsel testified he advised Petitioner to plead guilty because he believed Petitioner's chances of succeeding at trial were "very slim" based on his statement confessing to his involvement in the plan and the likelihood his co-conspirators would have testified against him. Plea counsel explained he researched the constitutionality of the tracking device after learning it was installed without a warrant or court order, however, he was unable to find any South Carolina case law addressing the issue. Plea counsel explained that in light of *United States v. Knotts*[2] and the placement of the tracking device on the outside of Petitioner's vehicle, he believed Petitioner's Fourth Amendment rights were not implicated.

Plea counsel admitted he was unaware of section 17–30–140 at the time of Petitioner's plea, did not find it in his research, and did not discuss it with Petitioner. He further testified, however, that he believed the statute was applicable to Petitioner's case and could have been used in an attempt to suppress some of the incriminating evidence. Plea counsel asserted that if he had been aware of section 17–30–140, he

---

**2.** 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) (holding police's placement and monitoring of a tracking beeper in a container of chemicals that the defendant later placed in his car was neither a search nor a seizure under the Fourth Amendment because the device only exposed information about the defendant's movements on public roads, for which there was no reasonable expectation of privacy).

would have filed a motion to suppress Petitioner's confession and his co-defendants' confessions, arguing they were the fruit of the poisonous tree stemming from the warrantless use of the tracking device. Plea counsel contended Petitioner's confession was the most damaging evidence against him, and he believed Petitioner would have had a "fighting chance" at trial if a motion to suppress the confession had succeeded.

The PCR court denied Petitioner's PCR application, finding he failed to prove deficient performance or resulting prejudice. It found plea counsel's testimony was credible while Petitioner's testimony was "wholly incredible." Analyzing the deficiency prong set forth in *Strickland v. Washington*,[3] the PCR court found plea counsel "performed extensive investigation into the GPS monitoring issue" and reasonably relied on Supreme Court case law in determining there was no Fourth Amendment violation "based on the status of the law at the time." It found plea counsel fully advised Petitioner about the ability to challenge the evidence based on his research.

Analyzing the prejudice prong, the PCR court found Petitioner failed to demonstrate he would have proceeded to trial but for counsel's failure to discover the statute and challenge the placement of the tracking device. Moreover, the PCR court found that even if plea counsel had successfully achieved the suppression of the evidence stemming from the tracking device, the outcome of Petitioner's case would not have been different because there was overwhelming evidence of his guilt.

Petitioner sought a writ of certiorari, which this court granted on February 22, 2014.

**STANDARD OF REVIEW**

In a PCR proceeding, the applicant has the burden of establishing he is entitled to relief. *Terry v. State*, 383 S.C. 361, 370, 680 S.E.2d 277, 282 (2009). An appellate court gives great deference to a PCR court's findings of fact and conclusions of law. *Id.* at 371, 680 S.E.2d at 282 . "[An appellate court] will uphold the findings of the PCR court when there is

---

**3.** 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (setting forth the two-pronged test of deficient performance and prejudice that a PCR applicant must satisfy to establish ineffective assistance of counsel).

any evidence of probative value to support them, and will reverse the decision of the PCR court when it is controlled by an error of law." *Id.* "[An appellate court] gives great deference to a PCR [court's] findings where matters of credibility are involved." *Simuel v. State*, 390 S.C. 267, 270, 701 S.E.2d 738, 739 (2010).

## LAW AND ANALYSIS

Petitioner argues plea counsel was deficient in failing to locate section 17–30–140 and failing to advise Petitioner of his ability to challenge the admissibility of his confession and other critical evidence. Petitioner further argues the PCR court erred in finding he was not prejudiced because the evidence established a reasonable probability that he would have not have pled guilty and would have proceeded to trial but for counsel's deficiency. We disagree.

Clearly, a defendant entering a guilty plea is entitled to the effective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To establish a claim of ineffective assistance, however, a PCR applicant must prove counsel's performance was deficient and the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. "A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial." *Kolle v. State*, 386 S.C. 578, 588, 690 S.E.2d 73, 78 (2010) (quoting *Rolen v. State*, 384 S.C. 409, 413, 683 S.E.2d 471, 474 (2009)).

In the context of a guilty plea, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. Ordinarily, a PCR applicant must show some evidence "that would have affected counsel's advice to [him] to accept the plea bargain offered or that would have caused [him] to decline to accept it." *Stalk v. State*, 383 S.C. 559, 563, 681 S.E.2d 592, 594 (2009). "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry

engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366.

Like the PCR court, in conducting the prejudice analysis, we must consider the evolution of our Fourth Amendment jurisprudence applicable to the use of tracking devices on public roadways. Our supreme court recently considered this history in *State v. Adams*, explaining,

> In *Knotts*, law enforcement, with the owner's consent, concealed a beeper in a container of chloroform that was eventually loaded onto a target vehicle. Law enforcement then monitored the beeper and maintained surveillance on the target vehicle, ultimately arresting Knotts several days after he took possession of the container. The Supreme Court found no Fourth Amendment violation, upholding the warrantless use of the beeper because "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."
>
> One year later, in *Karo*,[4] the Supreme Court "addressed the question left open by *Knotts*, whether the installation of a beeper in a container amounted to a search or seizure." In *Karo*, law enforcement officers installed a beeper inside a container of chemicals prior to the container being transferred to the buyer. "As in *Knotts*, at the time the beeper was installed the container belonged to a third party, and it did not come into possession of the defendant until later." The Court held that, because the beeper was installed with the consent of the owner of the container, no search or seizure occurred because "[t]he mere transfer to Karo of a can containing an unmonitored beeper infringed no privacy interest."

409 S.C. 641, 651–52, 763 S.E.2d 341, 347 (2014) (citations omitted) (footnote omitted).

In 2002, as part of the South Carolina Homeland Security Act,[5] the legislature enacted a statute outlining the require-

---

4. *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984).

5. Act No. 339, 2002 S.C. Acts 3619.

ments for obtaining authorization for the placement of a GPS tracking device. S.C. Code Ann. § 17–30–140 (2014). Pursuant to the statute, "[t]he Attorney General or any solicitor may make application to a judge of competent jurisdiction for an order authorizing or approving the installation and use of a mobile tracking device by the South Carolina Law Enforcement Division or any law enforcement entity of a political subdivision of this State." § 17–30–140(A). "Upon application made as provided under subsection (B), the court, upon finding that the certification and statements required by subsection (B) have been made in the application and probable cause exists, must enter an ex parte order authorizing the installation and use of a mobile tracking device." § 17–30–140(C). "The standards established by the United States Supreme Court for the installation and monitoring of mobile tracking devices apply to the installation and use of any device as authorized by this section." § 17–30–140(E).

In 2012, the United States Supreme Court decided *United States v. Jones*, which upheld the reversal of a defendant's conviction on drug trafficking conspiracy charges. ––– U.S. –––, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). There, the Court found the government's warrantless installation of a GPS tracking device on defendant's vehicle and its use of the device to monitor the vehicle's movements constituted a Fourth Amendment search. *Id.* at 949. Rejecting the government's argument that portions of the tracking of the Jeep Grand Cherokee's movement occurred upon public streets—on which defendant would have no reasonable expectation of privacy under the tracking device analysis of *Knotts*—the Supreme Court held the government's intrusion on an "effect" (the Cherokee) for the purpose of obtaining tracking information constituted a search. *Id.*; *see also* U.S. Const. amend. IV. ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .").

Thereafter, our supreme court decided *Adams, supra,* which considered a motion to suppress drug evidence stemming from the placement of a GPS tracking device on the defendant's car without a warrant or court order. 409 S.C. 641, 763 S.E.2d 341.

Concluding *Knotts* was not binding precedent [6] authorizing the officers' warrantless placement of the GPS tracking device, the supreme court held, "Because the only binding law in this case was a statute that *forbade* law enforcement officers from installing a GPS device on [the defendant's] car without court authorization, there is no support for the State's invocation of the good-faith reliance exception as an additional sustaining ground to uphold the conviction." *Id.* at 653, 763 S.E.2d at 348. An "intervening acts" argument was likewise rejected because "Adams' traffic violations provide[d] an insufficient attenuation from the taint of the illegal search. The traffic stop was entirely predicated on the information obtained from the GPS device and law enforcement's desire to search Adams and his vehicle for drugs." *Id.* at 648, 763 S.E.2d at 345.

██ Relying upon *Jones* and *Adams*, Petitioner argues counsel was ineffective in failing to locate section 17–30–140 and advise Petitioner of the possibility of moving to suppress based upon officers' failure to comply with its statutory warrant requirement. However, even if plea counsel was deficient in failing to advise Petitioner of section 17–30–140 in conjunction with their discussions of moving to suppress and attempting to challenge the legality of the GPS monitoring at trial, we find probative evidence supports the PCR court's finding that Petitioner failed to prove the prejudice necessary to support the granting of post-conviction relief. *See Strickland*, 466 U.S. at 700, 104 S.Ct. 2052 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

Although Petitioner asserted he would have proceeded to trial had plea counsel advised him of the statute, the PCR court found Petitioner's testimony "wholly incredible." *See Simuel*, 390 S.C. at 270, 701 S.E.2d at 739 ("[An appellate court] gives great deference to a PCR [court's] findings where matters of credibility are involved."); *Stalk*, 383 S.C. at 563, 681 S.E.2d at 595 ("[The] prejudice prong ordinarily requires more than simply a defendant's assertion that but for counsel's deficient performance he would not have pled but would have

---

6. The United States Supreme Court decided *United States v. Jones* during the pendency of Adams' appeal.

gone to trial."); *Hill*, 474 U.S. at 59, 106 S.Ct. 366 ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). At the time of Petitioner's guilty plea in 2008, the constitutionality of the placement of a GPS tracking device on a vehicle was an unsettled question of law; the United States Supreme Court had not decided *Jones*, and our supreme court had not decided *Adams*.

Instead, *Knotts* provided authority suggesting the placement of a GPS tracking device on the outside of a vehicle might not have been a constitutional violation, and other South Carolina courts considering the question before *Jones* found no constitutional violation under such circumstances. *See United States v. Narrl*, 789 F.Supp.2d 645, 652 (D.S.C. 2011) ("*Knotts* is clear that the use of a tracking device to track a person's movements on public roads is not a violation of that person's Fourth Amendment rights."). As no clear authority concluded that the placement of a tracking device on a vehicle without a court order was a Fourth Amendment violation at the time of Petitioner's plea, we find Petitioner failed to establish a reasonable probability that he would have prevailed at a suppression hearing despite the violation of the statute. *See Hutto v. State*, 387 S.C. 244, 250, 692 S.E.2d 196, 199 (2010) (stating the exclusion of evidence should be limited to violations of constitutional rights and not to statutory violations); *Rollison v. State*, 346 S.C. 506, 509–10, 552 S.E.2d 290, 292 (2001) (holding counsel's failure to investigate the circumstances surrounding the legality of a weapons frisk and advising applicant to plead guilty did not prejudice him). Because probative evidence supports the PCR court's finding that Petitioner failed to prove prejudice because he did not establish a reasonable probability he would have proceeded to trial instead of pleading guilty but for counsel's errors, we uphold the decision of the PCR court. *See Terry*, 383 S.C. at 371, 680 S.E.2d at 282 ("[An appellate court] will uphold the findings of the PCR court when there is any evidence of probative value to support them, and will reverse the decision of the PCR court when it is controlled by an error of law.").

Moreover, we find probative evidence supports the PCR court's finding that even if counsel had been successful in

suppressing the evidence found as a result of the GPS track-
ing device, due to the overwhelming evidence of Petitioner's
guilt, the outcome of Petitioner's case would have been no
different had he chosen to proceed to trial. *See Hutto*, 387 S.C.
at 249, 692 S.E.2d at 198 ("No prejudice occurs, despite
deficient performance, when there is overwhelming evidence
of guilt.").[7] Although police used the GPS tracking device to
locate Petitioner to execute the arrest warrant, police obtained
the arrest warrant through other aspects of the investigation
independent of the tracking device. Police considered Petition-
er a suspect because of his suspicious behavior and lack of
injuries after the robbery, they located a glove outside Peti-
tioner's house matching a glove from the armored truck, and
Whitaker broke down and told police that Petitioner had been
planning the heist for several months. Even if counsel had
been successful in having Petitioner's own confession sup-
pressed, Petitioner would likely have lacked standing to chal-
lenge the pictures of money from Domonique's phone, and the
co-defendants' statements would have been admissible against
him. These independent aspects of the investigation, as well as
the other evidence unrelated to the GPS tracker that police
developed against Petitioner, provide further probative evi-
dence supporting the PCR court's finding that Petitioner
failed to establish prejudice. *See Terry*, 383 S.C. at 371, 680
S.E.2d at 282 ("[An appellate court] will uphold the findings of
the PCR court when there is any evidence of probative value
to support them, and will reverse the decision of the PCR
court when it is controlled by an error of law.").

---

7. We resolve this matter in reliance upon the "prejudice" prong of the
*Strickland* analysis. However, like the PCR court, we recognize the
clarification of our Fourth Amendment jurisprudence with respect to
the warrantless placement of tracking devices in *United States v. Jones*
and *State v. Adams* occurred some years after Petitioner's guilty plea.
Our courts have "never required an attorney to be clairvoyant or
anticipate changes in the law which were not in existence at the time of
trial." *Gilmore v. State*, 314 S.C. 453, 457, 445 S.E.2d 454 (1994)
*overruled on other grounds by Brightman v. State*, 336 S.C. 348, 520
S.E.2d 614 (1999); *see also Robinson v. State*, 308 S.C. 74, 77–78, 417
S.E.2d 88, 91–92 (1992) (holding defense counsel was not ineffective in
failing to present evidence of battered woman's syndrome in support of
wife's self-defense claim where trial took place six years before our
supreme court recognized battered woman's syndrome as relevant to a
claim of self-defense).

## CONCLUSION

We conclude probative evidence supports the PCR court's finding that Petitioner failed to establish ineffective assistance of counsel. Accordingly, the decision of the PCR court is

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.