# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Darryl Frierson, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-001940

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
Clifton Newman, Circuit Court Judge

---

Opinion No. 27801
Heard March 29, 2018 – Filed May 23, 2018

---

## AFFIRMED AS MODIFIED

---

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General James Clayton Mitchell, III, of Columbia, for Respondent.

---

**JUSTICE HEARN:** Petitioner Darryl Frierson pled guilty to assault and battery of a high and aggravated nature, criminal conspiracy, kidnapping, and armed robbery for his role in masterminding a $9.8 million heist from an armored truck. He was sentenced to an aggregate term of thirty-five years in prison. Thereafter, he applied for post-conviction relief (PCR), asserting he would not have pled guilty but instead

would have proceeded to trial had his plea counsel adequately informed him of the possibility to suppress evidence gathered from law enforcement's warrantless placement of a mobile tracking device on his vehicle. The PCR court denied relief, and the court of appeals affirmed. *Frierson v. State*, 417 S.C. 287, 789 S.E.2d 762 (Ct. App. 2016). We affirm as modified and take this opportunity to clarify the correct standard to determine prejudice when a defendant seeks PCR after pleading guilty.

## FACTUAL/PROCEDURAL BACKGROUND

Around midnight on May 10, 2007, Frierson and his co-worker, David Jones, were refueling their company's armored truck at a gas station outside of Columbia when several individuals overpowered them, forcing them back into the truck at gun point. The attackers drove the truck to a nearby strawberry field, tied Jones up with duct tape, transferred the money to a get-away car, and fled, leaving Frierson and Jones behind. Unlike Frierson, Jones was severely injured, but he was able to remove the duct tape and walk to a night club where he called police. Frierson remained behind in the truck, claiming he was too injured to find help. Eventually, Jones and Frierson were transported to the hospital, where law enforcement arrived to speak with them. Investigators immediately became suspicious of Frierson as they noticed he appeared to have suffered no visible injuries whereas Jones was severely beaten. Thereafter, Frierson vividly described the details of the crime scene, even though the events occurred in the dark around midnight. After Frierson was released from the hospital, he went to the police station, where police observed him through a two-way mirror naturally moving his arms despite wearing a sling and claiming his shoulder was injured. Frierson agreed to take a polygraph test, which he failed. Believing the crime was an "inside job," law enforcement continued its surveillance of Frierson by placing a tracking device on the outside of his vehicle, which revealed he was traveling extensively and shopping at a Florence mall.

While police tracked Frierson's movements, more incriminating evidence was uncovered, including a blue latex glove found in Frierson's trash outside his home that matched a glove found inside the armored truck shortly after the robbery. Police talked to Paul Whitaker, another co-worker and close friend of Frierson, who subsequently confessed that he took part in the robbery and identified Frierson as the mastermind. Thereafter, police searched Whitaker's house and found a substantial amount of money and mall receipts belonging to Frierson.

A few days later, pursuant to a valid arrest warrant, law enforcement officers used the tracking information to locate Frierson in Columbia, and they arrested him while he was driving with a friend, Domonique Blakney, who turned out to have

been involved in the crime as well. Police searched the car and found several thousand dollars in cash. At the police station, investigators found pictures of bags of money on Blakney's cell phone, and he confessed that Frierson was the mastermind of the heist. Presented with Blakney's statements, Frierson subsequently confessed, as did the remaining co-conspirators.

Thereafter, plea counsel advised Frierson the placement of the tracking device without a warrant was likely permissible;[1] however, plea counsel was unaware of section 17-30-140 of the South Carolina Code (2014).[2] Frierson pled guilty and later sought PCR, arguing plea counsel failed to adequately inform him that he could have moved to suppress the information garnered from the tracking device on constitutional grounds and based on section 17-30-140.[3] Although Frierson testified he would not have pled and instead proceeded to trial, the PCR court found his testimony "wholly incredible." The court denied relief, finding counsel was not deficient because he sufficiently researched the legality of the warrantless placement of the device and concluding Frierson failed to establish prejudice, primarily based on the court's credibility finding. The court of appeals affirmed, concluding there was overwhelming evidence that "the outcome of [Frierson's] case would have been no different had he chosen to proceed to trial." *Frierson*, 417 S.C. at 299, 789 S.E.2d

---

[1] Frierson pled guilty four years before the United States Supreme Court decided *United States v. Jones*, 565 U.S. 400 (2012), holding the physical placement of a monitoring device on a suspect's vehicle constituted a trespass on private property and therefore a search under the Fourth Amendment. At the time, plea counsel relied on *United States v. Knotts*, 460 U.S. 276 (1983), holding the use of a tracking device to monitor the location of a defendant traveling along public roadways did not invade any legitimate expectation of privacy and was not a "search" in violation of the Fourth Amendment, and *United States v. Karo*, 468 U.S. 705, 713 (1984), holding the placement of an electronic beeper in a container with the owner's consent did not constitute a search because the buyer's privacy interests were not infringed when he received possession of the container.

[2] Section 17-30-140(A) states, "The Attorney General or any solicitor may make application to a judge of competent jurisdiction for an order authorizing or approving the installation and use of a mobile tracking device by the South Carolina Law Enforcement Division or any law enforcement entity of a political subdivision of this State."

[3] Frierson actually discovered the existence of section 17-30-140 himself while researching his case in prison.

at 768. We granted Frierson's petition for a writ of certiorari to review the court of appeals' opinion.

## STANDARD OF REVIEW

We defer to the PCR court's factual findings and will uphold them if supported by any evidence in the record. *Smalls v. State*, 422 S.C. 174, ___, 810 S.E.2d 836, 839 (2018). Furthermore, we afford great deference to a PCR court's credibility findings. *Goins v. State*, 397 S.C. 568, 573, 726 S.E.2d 1, 3 (2012). Questions of law are reviewed de novo, and we will reverse the PCR court if its decision is controlled by an error of law. *Jamison v. State*, 410 S.C. 456, 465, 765 S.E.2d 123, 127 (2014).

## LAW/ANALYSIS

To establish a claim of ineffective assistance of counsel, the defendant has the burden of proving "(1) counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) counsel's deficient performance prejudiced the applicant's case." *McKnight v. State*, 378 S.C. 33, 40, 661 S.E.2d 354, 357 (2008). In order to establish prejudice when challenging a guilty plea, a defendant must prove "there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have gone to trial." *Harden v. State*, 360 S.C. 405, 408, 602 S.E.2d 48, 49 (2004). The crux of the inquiry is whether counsel's ineffective performance affected the outcome of the plea process, not whether the defendant would have been successful had he gone to trial. *Alexander v. State*, 303 S.C. 539, 542, 402 S.E.2d 484, 485 (1991). As the United States Supreme Court stated in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), "[I]n order to satisfy the 'prejudice' requirement, the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial."

Because the prejudice inquiry in a case involving a guilty plea is so limited, it was error for the court of appeals to conduct an overwhelming evidence analysis in this case. *See Smalls*, 422 S.C. at ___, 810 S.E.2d at 843–47 (surveying cases that discuss overwhelming evidence—all of which involved a conviction obtained at trial). The court of appeals initially acknowledged the correct standard and affirmed the PCR court's determination that Frierson failed to prove prejudice—and we affirm this decision. However, thereafter, the court proceeded to discuss how the outcome at trial would have been the same as Frierson's guilty plea due to the overwhelming evidence of guilt against him. The court of appeals exceeded the proper scope of the prejudice inquiry, and accordingly, we modify the portion of the court's opinion which addresses overwhelming evidence. We reiterate the prejudice analysis is

limited to the outcome of the plea process—whether but for counsel's deficiency, the defendant would have declined to plead and instead proceeded to trial.

Despite the court of appeals' erroneous application of the standard of review, it correctly deferred to the PCR court's finding that Frierson was not prejudiced. Accordingly, we **AFFIRM AS MODIFIED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**