680 S.E.2d 5

**Andre Kevin ROSEMOND, Petitioner,**

v.

**William D. CATOE, Commissioner, South Carolina Department of Corrections and Charles M. Condon, South Carolina Attorney General, Respondents.**

No. 26679.

Supreme Court of South Carolina.

Heard April 22, 2009.

Decided June 29, 2009.

Rehearing Denied Aug. 6, 2009.

David I. Bruck and Robert E. Lominack, both of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, for Respondent.

Justice KITTREDGE:

We granted a writ of certiorari to review the denial of Andre Rosemond's application for capital post-conviction relief (PCR). Rosemond argues the PCR court erred in denying relief primarily due to a complete lack of mitigation evidence in the sentencing phase. We agree and affirm in part, reverse in part, and remand for a new sentencing hearing.

## I.

Rosemond was convicted of murdering his live-in girlfriend, Christine Norton, and Norton's ten-year-old daughter. Rosemond confessed to killing Norton and her daughter and cooperated with law enforcement. There is no dispute regarding guilt. After a sentencing hearing, the jury recommended a sentence of death which the trial court imposed.

This Court affirmed Rosemond's conviction on direct appeal. *State v. Rosemond*, 335 S.C. 593, 598, 518 S.E.2d 588, 590 (1999). Rosemond then filed a PCR application. The PCR court ordered Dr. Pamela Crawford to evaluate Rosemond, and Dr. Crawford diagnosed Rosemond with schizophrenia, paranoid type. Subsequently, the PCR court stayed the PCR proceedings due to Rosemond's incompetence. Currently, Rosemond remains incompetent.

Despite Rosemond's incompetency, the PCR proceeding continued in response to this Court's ruling in *Council v. Catoe*, 359 S.C. 120, 129, 597 S.E.2d 782, 787 (2004) ("[W]e hold that a petitioner cannot delay his collateral review of his trial proceedings due to his incompetency. If, at a future date, the petitioner regains his competency and discovers that at his original PCR hearing, his incompetency prevented his ability to assist his counsel on a fact-based claim of ineffective assistance of counsel, he may then raise that claim in a subsequent proceeding.").

The PCR court denied relief on all grounds and further acknowledged Rosemond's continued incompetency. This

Court granted certiorari to review the PCR court's denial of relief.

## II.

Rosemond argues the denial of PCR relief was improper for a multitude of reasons. We first address trial counsel's opening statement and the alleged *ex parte* contact as these arguments affect the guilt phase as well as the sentencing phase.

### A. Opening Statement

Rosemond alleges the PCR court erred in finding no prejudice resulted from inappropriate comments in counsel's opening statement. We disagree.

 During trial counsel's opening statement, counsel told the jury that some of the jury members were selected because they "were whatever was left." At the PCR hearing, trial counsel acknowledged the comments were inappropriate and explained the statements were made out of frustration over the racial composition of the jury. Counsel's remarks constituted deficient representation. Therefore, we transition to the second prong of the *Strickland* test to determine whether prejudice occurred. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). No prejudice occurred in the guilt phase as the State presented overwhelming evidence of guilt: Rosemond's confession and the murder weapon, which Rosemond helped the police locate. Further, in his confession, Rosemond admitted to planning the murder of his girlfriend.

 Similarly, Rosemond was not prejudiced by trial counsel's opening statement during the sentencing phase of his trial. First, the opening argument was made on March 23, 1996, and the jury made its sentencing recommendation on March 30, 1996. Additionally, following the sentencing phase, the jury deliberated approximately eleven hours over two days before recommending a sentence of death. Significantly, the jury notified the trial court of its difficulty reaching a decision, which resulted in an *Allen* charge. It is apparent the jury discharged its duties in good faith and did not penalize Rosemond for his counsel's improper comments at the beginning of

the guilt phase. Rosemond suffered no prejudice. We find evidence supports the PCR court's determination that Rosemond is not entitled to relief on this ground.

## B. *Ex Parte* Communication

██ Rosemond next argues he is entitled to PCR because the Solicitor "chose" the judge to preside over Rosemond's trial and met with the judge to confirm his willingness to serve. We disagree. Former Chief Justice Finney assigned the trial judge to this case in February 1996.[1] We reviewed the record and find the able trial judge presided over this case in a fair and impartial manner.

## III.

Next, Rosemond argues the PCR court erred in denying relief due to the complete lack of mitigation evidence in the sentencing phase. We agree.

██ During the PCR hearing, trial counsel testified he did not present evidence of Rosemond's alleged mental illness as a mitigating factor because the trial court found Rosemond competent to stand trial. Trial counsel mistakenly believed the ruling precluded him from presenting Rosemond's mental health mitigation evidence in the sentencing phase. Counsel's erroneous belief clearly constituted deficient representation. We turn to the prejudice prong of *Strickland.*

██ When determining if want of mitigation evidence resulted in prejudice, we must determine whether the "mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of [the defendant's] culpability." *Wiggins v. Smith,* 539 U.S. 510, 538, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 398, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *see also Rompilla v. Beard,* 545 U.S. 374, 393, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). In this regard, the United States Supreme Court held,

---

1. We acknowledge the practice of the prosecutor selecting the trial judge is inappropriate and troubling. We further note this alleged practice is no longer possible, as the Chief Justice of the South Carolina Supreme Court makes judicial assignments in death penalty cases in conjunction with Court Administration.

"the likelihood of a different result if the [mitigation] evidence had gone in is 'sufficient to undermine confidence in the outcome' actually reached at sentencing." *Rompilla*, 545 U.S. at 393, 125 S.Ct. 2456 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Accordingly, if trial counsel's complete failure to present mitigation evidence undermines confidence in the outcome, then Rosemond suffered prejudice.

We find this case analogous to our recent holding in *Council v. State*, 380 S.C. 159, 181, 670 S.E.2d 356, 368 (2008), in which this Court upheld the PCR court's grant of a new sentencing trial. In *Council*, only very limited mitigation testimony was presented and no medical evidence was presented. *Id.* at 177, 670 S.E.2d at 365. Thus, this Court held, "there was very strong mitigating evidence to be weighed against the [six] aggravating circumstances presented by the State. We believe, as did the PCR judge, this evidence may well have influenced the jury's assessment of [Council's] culpability." *Id.* at 176, 670 S.E.2d at 365. Similarly, the United States Court of Appeals for the Fourth Circuit concluded, " 'had the jury been able to place [mental disturbance] on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance.' " *Gray v. Branker*, 529 F.3d 220, 238 (4th Cir.2008) (quoting *Wiggins*, 539 U.S. at 537, 123 S.Ct. 2527).

In the case before us, we need not speculate about the mitigation evidence known by trial counsel as the evidence was presented during pretrial competency hearings. At one competency hearing,[2] Dr. Harold Morgan testified Rosemond was "clearly paranoid." Dr. Morgan described Rosemond's behavior during the interview as "very evasive from the beginning, very guarded, very distant, very aloof, sort of exuding tension and fear and hostility." Rosemond eventually terminated the interview with Dr. Morgan.

At the same competency hearing, Dr. Shea testified he learned Rosemond's brother was a paranoid schizophrenic and Rosemond scored an 84 on his I.Q. test, which is in the low average range. Dr. Shea, after many tests and interviews, testified, "[i]t's my belief that Mr. Rosemond has some sort of

---

2. A competency hearing is, of course, conducted outside the presence of the jury.

a paranoid process going on. I'm having a very difficult time making an exact diagnosis, because, quite frankly, he won't—he won't discuss things with me to the extent that I need to make an accurate diagnosis." Dr. Shea described Rosemond's behavior as "even more odd" and progressively worsening. Dr. Shea's working diagnosis of Rosemond was he suffered from a delusional disorder or schizophrenia.

In a subsequent competency hearing, Dr. Schwartz–Watts of the Department of Mental Health testified she, Dr. Donald Morgan, and Dr. Geoffrey McKee evaluated Rosemond, and Dr. Schwartz–Watts believed him competent to stand trial. Dr. Shea agreed at this second competency hearing that Rosemond was competent to stand trial but reiterated Rosemond suffers from paranoia.

During the PCR hearing, Dr. Shea testified about a conversation with Dr. Schwartz–Watts, in which Dr. Schwartz–Watts stated Rosemond may have pulled himself together to appear competent. Further, according to Dr. Shea, Dr. Schwartz–Watts believed Rosemond may have been exhibiting the early stages of schizophrenia. Dr. Schwartz–Watts agreed to testify to her belief, and Dr. Shea passed this information on to trial counsel.

■ Evidence of Rosemond's purported mental illness was, therefore, available for the sentencing phase. However, trial counsel only called five witnesses, none of whom made any reference to Rosemond's mental health issues: Rosemond's father, Rosemond's pastor, two family friends, and Dr. Shea.

Rosemond's father testified Rosemond was a "good boy." Rosemond's pastor stated Rosemond belongs to a "wholesome, functional family." The family friends described Rosemond as obedient, intelligent, and respected and asked the jury to have mercy. Lastly, Dr. Shea testified in a conclusory manner that Rosemond could adjust to prison. On cross-examination, Dr. Shea agreed he had not diagnosed Rosemond with a mental illness. In sum, **no** evidence was presented to the jury concerning Rosemond's troubling mental health issues. In fact, the theme of the evidence was the absence of any mental health concerns, for the evidence consistently portrayed Rosemond as a "good boy."

Rosemond's competence to stand trial in no manner precluded his counsel from presenting the mental illness information that was known. As no evidence of Rosemond's known mental health issues was presented, we reject the State's efforts to portray Rosemond's position as merely wanting to present a "fancier mitigation" case. *Jones v. State*, 332 S.C. 329, 339, 504 S.E.2d 822, 827 (1998) (affirming the denial of PCR finding Jones merely sought a "fancier" presentation of mitigation evidence).

Given the jury's struggle during the sentencing phase and the want of any mental health mitigation evidence, we hold the known evidence of Rosemond's mental health issues " 'might well have influenced the jury's appraisal' of culpability." *Rompilla*, 545 U.S. at 393, 125 S.Ct. 2456. As a result, Rosemond was prejudiced, as we find confidence in the outcome is substantially undermined. Thus, we reverse the denial of PCR on this issue and remand the case for a new sentencing hearing.

## IV.

In light of Rosemond's entitlement to a new sentencing hearing, we need not address the remaining assignment of errors concerning the sentencing phase. *Hughes v. State*, 367 S.C. 389, 409, 626 S.E.2d 805, 815 (2006) (holding appellate court need not reach remaining issues when addressed issues are dispositive). We nevertheless elect to address Rosemond's challenge to trial counsel's failure to object to the trial court instructing the jury not to recommend a sentence of life based on mercy: "you may recommend a sentence of life imprisonment for any reason or for no reason at all *other than as an act of mercy*." (emphasis added). We agree with Rosemond and hold that if a plea for mercy is admitted in evidence, then a jury should be entitled to consider it.

In *State v. Torrence*, 305 S.C. 45, 51, 406 S.E.2d 315, 318–19 (1991), this Court held a defendant may present witnesses to ask for mercy in the sentencing phase. Further, our case law requires a trial court to instruct a jury it may impose a life sentence even if it finds a statutory aggravating circum-

stance. *State v. Hicks,* 330 S.C. 207, 218–19, 499 S.E.2d 209, 215 (1998).

During the sentencing phase, the testimony of two family friends was properly admitted and these witnesses asked the jury for mercy. In contrast, the trial court then instructed the jury to discount such pleas by instructing the jury that it could not recommend a life sentence based on the evidence of mercy. Notably, the trial court's jury instruction mirrored the instruction found proper subsequent to Rosemond's trial in *State v. Hughey,* 339 S.C. 439, 459, 529 S.E.2d 721, 731 (2000). We overrule *Hughey* to the extent it approved and sanctioned the charge given here.

■■■ It is proper to instruct a jury in a capital sentencing phase that it may recommend a life sentence for any reason or no reason at all, including as an act of mercy. A jury's consideration of mercy, if proper evidence of mercy is admitted, is well recognized in the sentencing phase of a capital case. Because a capital jury may consider properly admitted evidence of mercy in the sentencing phase, consideration of mercy is not inconsistent with the instruction that "the jury should not be guided by sympathy, prejudice, passion, or public opinion...." *State v. Singleton,* 284 S.C. 388, 393, 326 S.E.2d 153, 156 (1985) *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 69 n. 5, 406 S.E.2d 315, 328 n. 5 (1991).

## V.

Due to the overwhelming evidence of guilt and want of prejudice, we affirm the PCR court's denial of relief regarding the assignment of errors related to the guilt phase of Rosemond's trial. We reverse the PCR court and hold Rosemond established his entitlement to a new sentencing hearing as a result of trial counsel's failure to present any mental health mitigation evidence in the sentencing phase. We remand the case for a new sentencing hearing.[3] We overrule *State v. Hughey* to the extent it approved the instruction that precluded a capital jury's consideration of mercy evidence in the sentencing phase.

---

3. As noted, Rosemond is currently not competent. A new sentencing hearing is contingent on Rosemond regaining competency.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.