**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(D)(2), SCACR**.

**THE STATE OF SOUTH CAROLINA**
In The Supreme Court

Kamell D. Evans, Respondent/Petitioner,

v.

State of South Carolina, Petitioner/Respondent.

Appellate Case No. 2011-188687

---

**ON WRIT OF CERTIORARI**

---

Appeal from Greenville County
The Honorable D. Garrison Hill, Circuit Court Judge

---

Memorandum Opinion No. 2015-MO-027
Heard December 9, 2014 – Filed May 13, 2015

---

**CERTIORARI DISMISSED AS IMPROVIDENTLY GRANTED**

---

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka and Senior Assistant Attorney General Melody J. Brown, all of Columbia, for Petitioner/Respondent.

William H. Ehlies, II, of Greenville, and Christopher W. Seeds, of Ithaca, New York, for Respondent/Petitioner.

J. Christopher Mills, of Columbia, for Amicus Curiae, South Carolina Religious Leaders and Scholars.

---

**PER CURIAM:** After careful review of the record, appendix, and briefs, the writs of certiorari are dismissed as improvidently granted.

**DISMISSED AS IMPROVIDENTLY GRANTED.**

**PLEICONES, BEATTY, and HEARN, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which KITTREDGE, J., concurs.**

**CHIEF JUSTICE TOAL:** I would reverse the post-conviction relief (PCR) court's finding that Respondent-Petitioner Kamell D. Evans is entitled to a new sentencing hearing because his trial counsel[1] failed to object to the trial court's erroneous jury instruction.[2]

## FACTUAL/PROCEDURAL HISTORY

Evans was convicted of two counts of murder, two counts of possession of a weapon during the commission of a violent crime, two counts of kidnapping, and one count of first degree burglary for the events leading up to and death of Greenville County Sheriff's Deputy Antonio J. "Joe" Sapinoso and his father, Antonio L. "Tony" Sapinoso.

The material facts at trial were undisputed, and Evans admitted to killing the two victims—the father and brother of Evans's ex-girlfriend Christina Roderiguez. The evidence established that on April 1, 2003, Evans arrived at the Sapinoso home at nighttime, dressed in all-black clothing and wearing gang insignia, with three guns, over forty rounds of ammunition, and a knife. Evans parked his vehicle in an unoccupied neighboring lot, and hid in the woods while he waited for Joe to arrive home after his shift with the Sheriff's Department. Upon Joe's arrival, Evans held the still-uniformed officer at gunpoint, relieved him of his service weapon, and forced him into the home. A four-hour hostage situation ensued, during which Evans engaged in negotiations with a hostage negotiator from the local police department and heard pleas for the release of the victims by his friends and family. Marcia Sapinoso (Tony's wife and Joe's mother) and Christina's minor son were locked in a closet upstairs.

The situation ended tragically when Evans shot the two victims in the head—one of whom (Joe) was shot "execution style"—killing them. Forensic evidence established that Evans shot Joe four times in the back of the head at close range while Joe's head was on the floor. Further, Evans shot Tony twice in the head and once in the arm, which was considered a defensive wound. Evans

---

[1] At trial and during the subsequent capital sentencing hearing, Evans was represented by Steven W. Sumner and James Lee Goldsmith, Jr. (collectively, trial counsel).

[2] However, I agree that the remaining issues raised by Evans should be dismissed as improvidently granted.

testified that he shot Joe when he tried to reach for Evans's gun, and that he shot Tony because he stood up at the same time Joe reached for the gun.

During the sentencing phase of Evans's trial, the State presented evidence of three aggravators with respect to the murder of Tony Sapinoso, and four aggravators with respect to the murder of Joe Sapinoso.[3] Marcia Sapinoso, Cheri Jones (Joe's longtime girlfriend), and one of Joe's fellow police officers and friends provided victim impact testimony. The State sought to capitalize on evidence presented during trial that painted Evans as a gang member, and presented testimony that he would likely pose a threat to the general prison population.

Likewise, Evans presented a full mitigation case, emphasizing his good character and his mental health issues. Various family members, friends, a co-worker, and former coaches of Evans testified to his positive attributes as a leader on the football field, a loving brother and uncle, a friend and mentor to children in need, and a solid and dependable employee. Evans's trial counsel also presented expert testimony to refute the State's expert's testimony that Evans would likely perpetrate gang violence while in prison. Finally, Evans's defense counsel presented testimony by a neuropsychologist that Evans had certain cognitive deficiencies indicative of brain dysfunction that would have impaired his decision-making during the hostage situation, and a psychiatrist, who diagnosed Evans with "major depressive disorder, single episode." In sum, during the sentencing phase of the trial, Evans's trial counsel sought to capitalize on their guilt-phase strategy of emphasizing Evans's good qualities; portraying the killings as a horrible, one-time mistake; and focusing on a theme of "no excuses."

By doing so, defense counsel hoped that the jury would show Evans mercy and spare him the death penalty by recommending a life sentence. After the trial judge explained mitigation and aggravation to the jury, Goldsmith then delivered his opening remarks during the sentencing phase:

---

[3] The following statutory aggravating circumstances were presented to the jury with respect to the murder of Joe Sapinoso: (1) the murder was committed during the commission of first degree burglary; (2) the murder was committed during the crime of kidnapping; (3) Evans murdered two or more persons pursuant to one course of conduct; and (4) Evans murdered a law enforcement officer during or because of the performance of his official duties. The same aggravating circumstances were presented to the jury with respect to Tony Sapinoso, with the exception of the law enforcement aggravator.

And part of what we are going to try to show you is that first and foremost, and this may seem simplistic, but . . . Evans is a human being. And you are being asked whether you will kill or sentence to life imprisonment a fellow human being, granted a human being capable of great evil. And I'm not going to diminish that. But what we hope to show you also is a human being capable of some good, perhaps even great good, a human being who in one 10-second episode of his life made a horrible decision, a tragedy, and inflicted much pain on people during that ten seconds and afterwards.

Goldsmith reiterated:

Even if the state proves every aggravating factor that they prove, that they present to you, even if you find aggravation, you still without question can sentence him to life imprisonment without the possibility of parole.

You can, as I have always said, show mercy. You can always choose life.

Goldsmith again focused on mercy during his closing argument, stating:

Ladies and gentlemen, we do not repay evil with evil. The solicitor is correct. I am going to ask for mercy for [Evans]. But I disagree with what the solicitor said is the definition of mercy. He said mercy is something that you deserve. I strenuously disagree, ladies and gentlemen.

If we deserved it, if we could earn it, then we probably wouldn't need it. Mercy is unmerited favor. You can't earn it; you don't deserve it; but you give it to him anyway. . . . We don't repay evil for evil. And mercy is appropriate in this case.

You can show mercy and you can choose life regardless of who deserves it and who does not. We all need mercy, but none of us have earned it and none of us deserve it.[4]

---

4 On the other hand, the Solicitor told jurors not to "feel sorry" for Evans.

The trial judge then delivered the following jury instruction:

> Now, in making your determination as to which sentence to
> recommend in this case you should consider the statutory aggravating
> circumstances, the statutory mitigating circumstances and any
> nonstatutory mitigating circumstances in arriving at your decision.
>
> . . . .
>
> The existence of any statutory or nonstatutory mitigating circumstance
> is not a bar to the recommendation of a death sentence so long as you
> have found the existence of at least one statutory aggravating
> circumstance beyond a reasonable doubt. Conversely, you may also
> recommend a sentence of life imprisonment even though you find at
> least one of the statutory aggravating circumstances beyond a
> reasonable doubt.
>
> Simply stated, *you may recommend a sentence of life imprisonment
> for any reason or for no reason at all other than as an act of mercy*.

(Emphasis added). Trial counsel did not object.

The jury recommended Evans be sentenced to death for the murders, and the
trial judge imposed the death sentence for both counts of murder, and lifetime
imprisonment for the first degree burglary charge.[5] This Court ultimately affirmed
Evans's convictions and sentence on direct appeal. *See State v. Evans*, 371 S.C. 27,
637 S.E.2d 313 (2006).

Subsequently, Evans filed an application for PCR. Evans's PCR hearing was
held on June 1–5, 2009. On June 25, 2009, this Court issued an opinion in
*Rosemond v. Catoe*, 383 S.C. 320, 680 S.E.2d 5 (2009), in which it admonished the
bench that the specific phrasing of the same jury charge delivered in Evans's case
not be used again. Evans subsequently moved to amend his application, arguing
that his trial counsel was ineffective for failing to object to the condemned charge.

---

[5] The trial court declined to impose sentences for the kidnapping and weapon
convictions pursuant to sections 16-3-490(A) and -910 of the South Carolina Code.
*See* S.C. Code Ann. §§ 16-3-490(A), -910 (2003).

At the PCR hearing, Evans's trial counsel maintained that they did not understand the instruction to preclude the jury's consideration of mercy. Instead, they claimed they did not object to the jury instruction because they believed the instruction emphasized to the jurors that they *could* consider mercy. Sumner testified he "liked" the charge because it was "brief," it "use[d] the word mercy," and it "seem[ed] to get across what [trial counsel] were trying to do." Goldsmith testified he thought the charge "pretty much tracked with what [trial counsel] thought should be charged," and he believed the charge "was sort of an expansive charge." Both testified that had they believed the charge limited the jury's "use of mercy," they would have objected because mercy was the "primary element," "key highlight," and the "major part" of their mitigation case, and because Goldsmith had "built [his] closing argument around mercy."

The PCR court found that Evans was entitled to PCR on the sole basis that Evans's trial counsel failed to object to the trial court's jury instruction regarding mercy, and found that prejudice to Evans resulted. The PCR court rejected Evans's other arguments.

The State petitioned this Court for a writ of certiorari,[6] and we granted review pursuant to Rule 243, SCACR.

## ANALYSIS

The State argues that the PCR court erred in finding Evans's trial counsel ineffective for failing to object to the trial court's jury instruction regarding mercy during the sentencing phase of Evans's trial. I agree and would reverse the PCR court's decision granting Evans relief on this basis.

On appeal in a PCR action, this Court applies an "any evidence" standard of review. *Cherry v. State*, 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). In other words, the "PCR court's ruling should be upheld if it is supported by any evidence of probative value in the record." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008) (citing *Cherry*, 300 S.C. at 119, 386 S.E.2d at 626).

A criminal defendant is guaranteed the right to effective assistance of

---

[6] Evans also appealed the PCR court's order. As stated, *supra*, I agree that those grounds for appeal should be dismissed as improvidently granted.

counsel under the Sixth Amendment to the United States Constitution.  U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984).  "Where allegations of ineffective assistance of counsel are made, the question becomes, 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'"  *Butler v. State*, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) (quoting *Strickland,* 466 U.S. at 686).

As such, courts evaluate allegations of ineffective assistance of counsel using a two-pronged test.  *Cherry*, 300 S.C. at 117, 386 S.E.2d at 625 (citing *Strickland*, 466 U.S. at 668).  First, the applicant must demonstrate counsel's representation was deficient, which is measured by an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687–88.  "Under this prong, '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Cherry*, 300 S.C. at 117, 386 S.E.2d at 625 (quoting *Strickland*, 466 U.S. at 688).

Second, the applicant must demonstrate he was prejudiced by counsel's performance in such a manner that, but for counsel's error, there is a reasonable probability the result of the proceedings would have been different.  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

In *Rosemond*, we granted relief to the PCR applicant on the basis that he established his entitlement to a new sentencing hearing as a result of trial counsel's failure to present any mental health mitigation evidence in the sentencing phase.  383 S.C. at 330, 680 S.E.2d at 11.  However, in dictum we said:

> We nevertheless elect to address [the applicant's] challenge to trial counsel's failure to object to the trial court instructing the jury not to recommend a sentence of life based on mercy: "you may recommend a sentence of life imprisonment for any reason or for no reason at all *other than as an act of mercy.*" (emphasis added). We agree with [the applicant] and hold that if a plea for mercy is admitted in evidence, then a jury should be entitled to consider it.

*Id.* at 329, 680 S.E.2d at 10.  Further, we explained:

> It is proper to instruct a jury in a capital sentencing phase that it may

recommend a life sentence for any reason or no reason at all, including as an act of mercy. A jury's consideration of mercy, if proper evidence of mercy is admitted, is well recognized in the sentencing phase of a capital case. Because a capital jury may consider properly admitted evidence of mercy in the sentencing phase, consideration of mercy is not inconsistent with the instruction that "the jury should not be guided by sympathy, prejudice, passion, or public opinion . . . ."

*Id.* at 330, 680 S.E.2d at 10–11 (quoting *State v. Singleton*, 284 S.C. 388, 393, 326 S.E.2d 153, 156 (1985), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991)).

In *Rosemond*, we did not analyze the condemned jury instruction in the context of *Strickland*; instead, we alerted the bench and bar to the potential for confusion resulting from its continued use. Thus, in analyzing this same instruction here, we must do so using the ineffectiveness paradigm.

Regardless of whether trial counsel was deficient in failing to object to the instruction here,[7] I would hold that Evans cannot satisfy the prejudice prong of *Strickland*. In that regard, the ultimate test to determine the propriety of the trial judge's charge is "what a reasonable juror would have understood the charge to mean" in the context of the *entire* jury instruction. *State v. Bell*, 305 S.C. 11, 16, 406 S.E.2d 165, 168 (1991); *see also, e.g.*, *State v. Hicks*, 330 S.C. 207, 218, 499 S.E.2d 209, 215 (1998) ("A jury instruction must be viewed in the context of the overall charge.").

Here, Evans contests one sentence of a lengthy charge that instructed the jury to consider all statutory and non-statutory mitigating factors in arriving at their verdict. In my opinion, the rest of the instruction, the emphasis placed on mercy by both the State and the defense, the trial judge's general opening explanation of mitigation and aggravation to the jury, and the unremarkable position of the condemned instruction in the context of the overall charge, all combine to preclude

---

[7] I note that trial counsel did not have the benefit of the *Rosemond* ruling at the time of trial or even at the initial PCR hearing. *See Wilds v. State*, 407 S.C. 432, 442–43, 756 S.E.2d 387, 392 (Ct. App. 2014), *cert. granted*, Nov. 20, 2014 (finding that trial counsel was not deficient where the case on which the PCR applicant relied had not yet been decided by this Court).

a finding of prejudice.  Under these facts, a reasonable juror unquestionably would have been aware that he or she could recommend life as an act of mercy.  Thus, it is my opinion that Evans has not proven that he was prejudiced by the defective instruction; consequently, his *Strickland* argument must fail.

Accordingly, I would reverse this portion of the PCR court's decision.

**KITTREDGE, J., concurs.**