**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Supreme Court

Luther Garner, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2014-001312

———————

**ON WRIT OF CERTIORARI**

———————

Appeal From Horry County
J. Cordell Maddox, Jr., Circuit Court Judge

———————

Memorandum Opinion No. 2016-MO-005
Submitted January 15, 2016 – Filed March 23, 2016

———————

**REVERSED AND REMANDED**

———————

Appellate Defender Lara Mary Caudy, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Jessica Elizabeth Kinard, both of Columbia, for Respondent.

———————

**PER CURIAM:**  A jury convicted Luther Garner of murder, first-degree burglary, and attempted armed robbery.  The trial judge sentenced Garner to an aggregate sentence of forty years' imprisonment.  On appeal, the Court of Appeals affirmed Garner's convictions and sentences.  *State v. Garner*, 389 S.C. 61, 697 S.E.2d 615 (Ct. App. 2010).  Garner filed an application for Post-Conviction Relief ("PCR"), which was dismissed after a hearing.  This Court granted Garner's petition for a writ of certiorari to determine whether the PCR judge erred in ruling that trial counsel was not ineffective in failing to object to the issuance and substance of the trial judge's *Allen*[1] charge.  We reverse the PCR judge's decision and remand for a new trial.

## I.      Factual / Procedural History

On January 11, 2005 at approximately 7:30 p.m., Investigator John Caulder with the Horry County Police Department responded to a 911 call reporting the discovery of a deceased male at a residence in Conway.  The male, who was later identified as Amadro Flores Espinozat ("Victim"), had been severely beaten and ultimately died on either January 10th or 11th as the result of blunt-force trauma to the head.  At the crime scene, the investigating officers found a bloody shoe print, a bloody handprint, a single bullet hole, and a shell casing from a .22 caliber bullet.  This evidence, however, was inconclusive and failed to yield any potential suspects.

On January 12, 2005, Lonya Sowdon called 911 and reported that she had witnessed the murder.  Sowdon, an admitted crack cocaine addict, told investigators that she had purchased crack cocaine from Garner and Lee Pierce.  Sowdon claimed Garner and Pierce asked her to give them a ride on the morning of January 10, 2005, and directed her to drive to the Victim's residence in Conway, a place of known drug dealers.  In her description of the attack on Victim, Sowdon identified Garner as the sole assailant.  Based primarily on Sowdon's statements, an Horry County grand jury indicted Garner for murder, first-degree burglary, armed robbery, and attempted armed robbery.

Circuit Court Judge Edward B. Cottingham presided over the jury trial conducted between May 29, 2007 and June 1, 2007.  On May 31, 2007, the trial judge submitted the case to the jury at 6:12 p.m.  Approximately two hours later, the jury requested to go home for the evening.  The judge dismissed the jury and

---

[1]  *See Allen v. United States*, 164 U.S. 492 (1896) (holding that a trial judge may give a charge urging jurors who appear to be "deadlocked" to reach a verdict).

instructed the jurors to return the next day at 10:00 a.m.  The following morning, the jury returned and resumed deliberations at 10:00 a.m.  At 10:15 a.m., the jury submitted a written note to the judge requesting clarification regarding the following questions:

> "If the jury is at an 11 to 1 stand still [sic], must our final decision in this case be not guilty?"

> "What are our options?"

The jury entered the courtroom at 10:33 a.m. and received further instructions from the judge, which included an *Allen* charge.  Specifically, the judge instructed:

> Now, you have asked of me another question and I again thank you for it.  "If the jury is not in a position at this time to reach a unanimous verdict, must our final decision in this be not guilty," and the answer is absolutely not.  Your verdict must be unanimous either guilty or unanimous not guilty.  **In the event that you are unable to reach a verdict then that's what we call a hung jury and that simply means that nobody wins**.  It simply means that sometime in the future some 12 folks chosen just like you will come into this courtroom, basically hear the same testimony, some jury just like you will hear the whole thing again and that issue will then be resolved.  I have no reason to suggest or suspect that I will ever get 12 more people more dedicated, more anxious to do their duty than you 12; and so, don't walk away thinking that somebody wins and somebody loses.  **It means everybody loses and our system has failed**.

> Now, I charge you as I only can the only mode providing by our laws for a direct - - deciding questions of fact is by a verdict of the jury just like you.  In most all cases, ladies and gentlemen, absolute certainty cannot be obtained or expected where the matter is in dispute initially.  It isn't always even, easy for even two people to initially agree; and so, when 12 people must agree it becomes correspondingly more difficult.  I tell you it is very unusual for a jury to go out and to immediately or quickly retain a verdict.  You have only been deliberating two hours.  The case lasted three days.  That's not unusual.  You've got a voluminous amount of matters to deal with.  That is what would happen if a jury was in agreement to begin with.  **At the same time, ladies and gentlemen, we usually get a verdict under our system of jurisprudence**.  So, while it is normal for jurors

to disagree at first, and I fully understand that, we nevertheless get a verdict after the jury has laid aside all extraneous or outside matters and have determined to try this case on its merits and on the basis of the law and evidence in this case, direct and circumstantial.

It has been said that jury service is perhaps the highest service a citizen can perform for his or her own country or state during peacetime, and I certainly agree with that. **However, a juror does not render good service who arbitrarily says, "I know what I want to do in this case and when everybody else agrees with me then we will write a verdict and we will not write a verdict until that time."** It was never intended that the verdict of the jurors should be the verdict of any one person, never intended for that. **At the same time I tell you that every juror has a right to his or her own opinion, and if he or she needs, he or she need not give up that merely for the purpose of being in agreement. I would never say that to you.** However, the verdict of a jury is the collective reasoning of all jurors and that is why we have a jury of 12. It is the duty of each of a jury to tell the others how he or she feels and why he or she may feel that way. Since the verdict of a jury is the result of the collective reasoning, it can be said that a verdict is a result of give and take. **With this in mind, I tell you that if the much larger of your number of panels are in favor of one position a dissenting juror or jurors should consider whether [or] not his or her position is a reasonable one, which makes no impression upon the minds of the majority**. **In other words, if a majority of you are of one position, the minority ought to seriously ask themselves whether they can reasonably doubt the correctness of the jury and judgment of the majority.** Although the verdict to which a jury agrees must, of course be his or her own verdict, the result of his or her own convictions and not merely acquiescence in the conclusion of his or her fellow jurors, yet in order to bring 12 minds to a unanimous result you must examine the questions submitted to you with candor and with a proper regard to and a respect for the opinions of each other. You should also consider that you were selected in the same manner from the same source which any future jury will be and as I indicated a while ago there is certainly no reason for me to suppose that this case will ever be submitted to 12 people more intelligent, impartial and competent than you and note there's no reason for me to suspect that more or clearer evidence will ever be produced on one side or the

other. **Ladies and gentlemen, in other words a mistrial of this case is an unfortunate thing**. If you do not agree on a verdict of not guilty or guilty unanimously it does not mean that everybody wins. It just means that at some future time . . . I will try this case with some jury sitting just exactly where you are, the same participants will come and the same lawyers will ask basically the same questions and probably get basically the same answers, and we will go through the entire process again. **In conclusion, if the State of South Carolina and the people it represents [are] entitled to a verdict in this case, they are entitled to it today, not tomorrow, not next week, not next year. Equally important, if this Defendant is entitled to a verdict, he is entitled to it today, not next month nor next year, today**, and so it is, Mr. Foreman, ladies and gentlemen, recognizing that there are difficult issues for you to consider, understanding the voluminous evidence that has been in the trial of this case, I would ask that you go back, continue deliberations, have a give and take between the majority and minority, however, …it falls, would not ask anybody ever to give up their heartfelt opinions, but at the same time, regardless of which side your decision is on consider, too, the positions of the other side to ascertain whether or not that position, be it in the minority or majority, is a reasonable one.

　　* 　* 　*

To answer your question again and that is this, if the jury is unable to reach a unanimous verdict must our final decision in the case be not guilty? The answer is absolutely no, no, never. Your verdict is either unanimously . . . not guilty or guilty. The only other thing would be no verdict at all, in which event I would have to declare a mistrial and we'd come in and do this whole thing again. Does that answer [your] question? Let there be no question about that. **Your verdict has got to be unanimous either not guilty or guilty, and we've got today and tomorrow to work through those issues**. (Emphasis added).

Following these instructions, the judge dismissed the jury and asked trial counsel whether he had "any exceptions or additions to the charge," to which counsel responded, "No, Sir. Your Honor." At 11:27 a.m., the jury returned a verdict, finding Garner guilty of murder, first-degree burglary, and attempted armed robbery.

Garner appealed his convictions and sentences to the Court of Appeals. The Court of Appeals affirmed. *State v. Garner*, 389 S.C. 61, 697 S.E.2d 615 (Ct. App. 2010). Following the denial of Garner's petition for rehearing, this Court denied Garner's petition for a writ of certiorari to review the decision of the Court of Appeals.

Garner filed a timely PCR application. In his application, Garner raised several allegations of ineffective assistance of trial counsel, which included counsel's failure to object to the trial judge's *Allen* charge. During the hearing, trial counsel recounted the circumstances surrounding the trial judge's decision to give the *Allen* charge. Counsel stated that he informed Garner of the jury's impasse and told him that the jury was "10 to 2 or 11 to 1." Counsel, however, did not know whether the majority was inclined toward an acquittal or guilty verdict. Due to the short duration of the jury's deliberations, counsel thought that the charge should not have been given. Rather, counsel thought the trial judge should have answered the jury question "no" and asked them to keep deliberating.

While counsel believed he objected to the issuance of the charge during an in-chambers conference, he readily acknowledged that he made a mistake in not voicing an objection on the record either before or after the charge was given. With respect to the substance of the *Allen* charge, counsel testified that it was directed at the minority voters on the jury and that the trial judge "lean[ed] real hard" on the jury to return a verdict.

The PCR judge denied Garner's request for relief and dismissed his application. Initially, the judge found trial counsel credible and, thus, believed counsel's claim that he objected to the *Allen* charge during an off-the-record, in-chambers conference. However, because there was no on-the-record objection, the judge found he was unable to determine whether trial counsel's objection constituted adequate performance.

Nevertheless, the judge concluded that Garner could not show prejudice from the lack of an objection to the issuance of the *Allen* charge or to its specific language. Because the jury informed the trial judge that they could not reach a verdict, the PCR judge found it was not an abuse of discretion to give an *Allen* charge. Further, the PCR judge ruled that the *Allen* charge was constitutionally permissible as it did not contain any objectionable language. Specifically, the PCR judge distinguished the *Allen* charge from one this Court deemed coercive in *Dawson v. State*, 352 S.C. 15, 18, 572 S.E.2d 445, 446 (2002), which stated:

I have sometimes thought that the juror who could render less service to the Court and to the country than any other juror is the juror who says, I know what I want to do in this case and when and if everybody agrees with me, then we'll write a verdict, and we'll not write a verdict until that time.

While the PCR judge recognized the trial judge in Garner's case used nearly identical language to that in *Dawson*, he found determinative the fact that the trial judge followed this statement by saying "I would never say that to you." Based on this statement, the PCR judge concluded the trial judge "told the jury the exact opposite of what the trial judge told the jury in *Dawson*." The PCR judge further distinguished Garner's case from *Dawson*, noting that the judge in *Dawson* was aware the jury was deadlocked at eleven to one and, thus, the "*Allen* charge in that circumstance was clearly coercive to the minority juror." In contrast, the PCR judge found Garner's trial judge was not aware of the division of the jury given "trial counsel testified he did not recall ever knowing the exact numerical division." Having found the trial judge was not aware of the division of the jury, the PCR judge held the charge was not coercive. Consequently, the PCR judge ruled that trial counsel was not ineffective in failing to object to the charge.

Garner filed a motion to reconsider pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure, which the PCR judge denied. This Court granted Garner's petition for a writ of certiorari to review the decision of the PCR judge.

## II.    Standard of Review

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington,* 466 U.S. 668 (1984); *Lomax v. State,* 379 S.C. 93, 665 S.E.2d 164 (2008). In a PCR proceeding, the burden is on the petitioner to prove the allegations in the application. *Thompson v. State,* 340 S.C. 112, 115, 531 S.E.2d 294, 296 (2000).

The United States Supreme Court has enunciated a two-pronged test to establish ineffective assistance of counsel by which a PCR applicant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland,* 466 U.S. at 687. "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Smith v. State*, 386 S.C. 562, 565, 689 S.E.2d 629, 631 (2010) (quoting *Strickland*, 466 U.S. at

691).  "To establish prejudice, the defendant is required 'to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Id.* at 565-66, 689 S.E.2d at 631 (quoting *Strickland*, 466 U.S. at 694).  "Moreover, no prejudice occurs, despite trial counsel's deficient performance, where there is otherwise overwhelming evidence of the defendant's guilt."  *Id.* at 566, 689 S.E.2d at 631 (citing *Rosemond v. Catoe*, 383 S.C. 320, 325, 680 S.E.2d 5, 8 (2009)).

In reviewing the PCR judge's decision, an appellate court is concerned only with whether any evidence of probative value exists to support that decision.  *Smith v. State,* 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006).  This Court will uphold the findings of the PCR judge when there is any evidence of probative value to support them, and will reverse the decision of the PCR judge when it is controlled by an error of law.  *Suber v. State*, 371 S.C. 554, 558-59, 640 S.E.2d 884, 886 (2007).

### III.    Discussion

#### A.    Arguments

Contrary to the PCR judge's ruling, Garner contends trial counsel was ineffective in failing to object to (1) the issuance of the *Allen* charge, and (2) the substance of the *Allen* charge as unconstitutionally coercive.  In support of these claims, Garner notes that the jury had only been deliberating for two hours before the charge was issued.  Given the short duration of deliberations, Garner asserts the trial judge should not have issued an *Allen* charge.  Instead, Garner maintains the judge should have answered the jury's question by instructing the jurors that the verdict must be either unanimously guilty or unanimously not guilty.  Because Garner believes it was unnecessary for the trial judge to issue an *Allen* charge, he argues that counsel's failure to object to its issuance constituted deficient performance.

Additionally, Garner asserts trial counsel was deficient in failing to object to the *Allen* charge as unconstitutionally coercive.  Garner claims the language of the *Allen* charge was coercive because it was directed at the minority jurors and was nearly identical to the language this Court found objectionable in *Dawson v. State*, 352 S.C. 15, 20, 572 S.E.2d 445, 447 (2002) and *Workman v. State*, 412 S.C. 128, 130, 771 S.E.2d 636, 638 (2015).  Further, Garner contends the judge's *Allen* charge was coercive in that:  (1) trial counsel testified the judge's tone was coercive; (2) the judge repeatedly told the jury the importance of returning a

unanimous verdict; (3) the evidence shows the judge was aware of the numerical division of the jury; and (4) the jury returned a guilty verdict less than thirty minutes after receiving the *Allen* charge. As a result of trial counsel's failure to object to the issuance and substance of the *Allen* charge, Garner claims he was prejudiced because there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

**B.     Analysis**

"An *Allen* charge is an instruction advising deadlocked jurors to have deference to each other's views, that they should listen, with a disposition to be convinced, to each other's arguments." *State v. Lee-Grigg*, 374 S.C. 388, 418 n.1, 649 S.E.2d 41, 57 n.1 (Ct. App. 2007) (internal quotation marks omitted), *aff'd*, 387 S.C. 310, 692 S.E.2d 895 (2010). "In South Carolina state courts, an *Allen* charge cannot be directed to the minority voters on the jury panel." *Green v. State*, 351 S.C. 184, 194, 569 S.E.2d 318, 323 (2002). "Instead, an *Allen* charge should be even-handed, directing both the majority and the minority to consider the other's views." *Id.* "A trial judge has a duty to urge, but not coerce, a jury to reach a verdict." *Id.*

"Whether an *Allen* charge is unconstitutionally coercive must be judged in its context and under all the circumstances." *Dawson v. State*, 352 S.C. 15, 20, 572 S.E.2d 445, 447 (2002) (internal quotation marks omitted). This Court has adopted the following factors ("*Tucker* factors") as the appropriate framework for which to assess whether an *Allen* charge is unconstitutionally coercive:

(1)     Does the charge speak specifically to the minority juror(s)?

(2)     Does the charge include any language such as "You have got to reach a decision in this case"?

(3)     Is there an inquiry into the jury's numerical division, which is generally coercive?

(4)     Does the time between when the charge was given, and when the jury returned a verdict, demonstrate coercion?

*Tucker v. Catoe*, 346 S.C. 483, 492, 552 S.E.2d 712, 716-17 (2001) (holding, in a capital case, that the United States Supreme Court in *Lowenfield v. Phelps*, 484 U.S. 231 (1988) set the standard by which to judge a constitutional claim regarding an *Allen* charge); *see Workman v. State*, 412 S.C. 128, 130, 771 S.E.2d 636, 638

(2015) (recognizing adoption of *Tucker* factors in non-capital case to determine whether an *Allen* charge is unconstitutionally coercive).

We agree with the PCR judge's ruling that counsel was not ineffective in failing to object to the issuance of the *Allen* charge. Although it is concerning that the trial judge issued an *Allen* charge so early in the jury's deliberations, we discern no error of law as this Court has approved the issuance of an *Allen* charge in cases where the jury expressed that it was at an impasse after less than two hours of deliberations. *See State v. Singleton*, 319 S.C. 312, 460 S.E.2d 573 (1995) (finding trial judge did not abuse his discretion in issuing an *Allen* charge after the jury deliberated thirty minutes). Moreover, based on the jury's note expressing that it was at a standstill and trial counsel's testimony that he believed the jury was deadlocked "11 to 1" or "10 to 2", there is evidence to support the PCR judge's findings that the trial judge properly issued the *Allen* charge and trial counsel had no basis to object to its issuance.

However, we conclude the PCR judge erred in finding that trial counsel was not ineffective in failing to object to the substance of the *Allen* charge. As a threshold matter, we note that counsel, whom the PCR judge found credible, admitted that he made a mistake in failing to object to the charge. Further, we find the charge was unduly coercive when assessed against the *Tucker* factors and compared to decisions issued by this Court.

First, in language nearly identical to that found coercive in *Workman*, the *Allen* charge was directed solely at the minority jurors as the judge urged "a dissenting juror" and "the minority" to reconsider their position with respect to that of the majority view. *See Workman*, 412 S.C. at 132, 771 S.E.2d at 639 (finding *Allen* charge coercive where the trial judge did not charge the majority jurors to consider the positions of the minority jurors); *see also Tucker*, 346 S.C. at 492-93, 552 S.E.2d at 717 (concluding *Allen* charge violated defendant's due process rights when the charge, when viewed as a whole, was impermissibly directed at minority jurors).

Second, while the *Allen* charge does not contain verbatim the explicitly coercive language that "You have got to reach a decision in this case," it included similarly coercive statements, such as: (1) "our system has failed" if there is a hung jury; (2) "we usually get a verdict;" (3) "a mistrial of this case is an unfortunate thing;" (4) the State of South Carolina or the Defendant is "entitled" to a verdict "today, not next week, not next year;" and (5) "we've got today and tomorrow to work through those issues" in reaching a verdict. *See Workman*, 412 S.C. at 132, 771 S.E.2d at 639 (recognizing as impermissibly coercive trial judge's

language beseeching jurors to continue deliberations "with the hope that you can arrive at a unanimous verdict within a reasonable time"); *see also State v. Williams*, 386 S.C. 503, 515 n.7, 690 S.E.2d 62, 68 n.7 (2010) (cautioning trial judges against using the language "with the hope that you can arrive at a verdict" because the language could potentially be construed as coercive as jurors are not required to reach a verdict after expressing they are deadlocked).

Third, although the judge did not inquire into the jury's numerical division, he was clearly aware of it given the jury's note that revealed the "11 to 1" division. The judge also failed to instruct the jurors not to disclose their numerical division in the future. *See Tucker*, 346 S.C. at 493-94, 552 S.E.2d at 717-18 (recognizing as improper the judge's failure to prevent the jury's self-reporting of its numerical division); *cf. Williams*, 386 S.C. at 515, 690 S.E.2d at 68 (finding *Allen* charge was proper where trial judge was aware of the jury's numerical division but did not direct his *Allen* charge to the three minority jurors despite his knowledge of the jury's numerical split).

Finally, the time between the issuance of the *Allen* charge and when the jury returned a verdict demonstrates coercion as less than an hour elapsed between the instructions and the verdict. *Cf. Lowenfield*, 484 U.S. at 240 ("We are mindful that the jury returned with its verdict soon after receiving the supplemental instruction, and that this suggests the possibility of coercion."); *Workman*, 412 S.C. at 132, 771 S.E.2d at 639 (concluding the fact that the jury returned a verdict two hours after receiving the *Allen* charge tended to prove the charge was coercive); *Tucker*, 346 S.C. at 494, 552 S.E.2d at 718 (finding the fact that the jury returned a verdict approximately an hour and a half after receiving the *Allen* charge tended to prove the charge was coercive).

Based on the foregoing, we conclude the *Allen* charge was unconstitutionally coercive and, thus, trial counsel was deficient in failing to object to the charge. *See Tucker*, 346 S.C. at 494, 552 S.E.2d at 717-18 ("[K]nowledge of the jury's numerical division combined with knowledge of its decisional disagreement, followed by an *Allen* charge directed, at least in part, to minority jurors, is impermissibly coercive.").

Having found that trial counsel was deficient, we next assess whether Garner satisfied his burden to prove he was prejudiced by counsel's deficient performance. We find there is a reasonable probability that the outcome of Garner's trial would have been different had the *Allen* charge been less coercive. Contrary to the trial judge's post-verdict assessment, there was not overwhelming evidence of Garner's guilt. Rather, the State's case against Garner was tenuous at best. As trial counsel

testified to during the PCR hearing, there was no direct evidence in the form of DNA or fingerprint evidence to identify Garner as the person who killed the Victim.  Further, the State's key witness, Sowdon, was an admitted crack cocaine addict whose credibility was completely discounted during her extensive cross-examination testimony.  Finally, the jury rendered a verdict less than an hour after receiving the trial judge's *Allen* charge.[2]

## IV.    Conclusion

We conclude the PCR judge erred in finding the *Allen* charge contained no objectionable language and, in turn, that trial counsel was not ineffective in failing to object to the substance of the charge.  Accordingly, we reverse the decision of the PCR judge and remand the matter for a new trial.

**REVERSED AND REMANDED.**

**PLEICONES, C.J., BEATTY, and HEARN, JJ., concur. KITTREDGE, J., concurring in result only.  FEW, J., not participating.**

---

[2]  Arguably, a coercive *Allen* charge constitutes a "structural defect" not subject to harmless error analysis.  *See* 75B Am. Jur. 2d *Trial* § 1346, at 126 (2007) ("An *Allen* charge that imposes such pressure on the jury that the accuracy and integrity of the verdict becomes uncertain violates a defendant's right to due process and the Sixth Amendment rights to an impartial jury trial and to a unanimous verdict."); *State v. Rivera,* 402 S.C. 225, 247, 741 S.E.2d 694, 705 (2013) ("[D]espite the strong interests upon which the harmless-error doctrine is based, there are certain constitutional rights which are 'so basic to a fair trial that their infraction can never be treated as harmless error.'  'These are structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards' and which 'affect the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" (citations omitted) (quoting *Arizona v. Fulimante*, 499 U.S. 279, 308-10 (1991))).

Nevertheless, even if deemed a trial error rather than a structural defect, the error was not harmless beyond a reasonable doubt because, as previously stated, there was no physical evidence linking Garner to the Victim's murder and Sowdon's testimony was discredited through cross-examination.  *See State v. Singleton*, 303 S.C. 313, 400 S.E.2d 487 (1991) (concluding that, in the absence of overwhelming evidence of guilt, an error was not harmless).